**B. Dan WITT, D.O., et al., Appellants,**

v.

**George M. AUSTIN, M.D., et al., Respondents.**

**No. WD 42677.**

Missouri Court of Appeals,
Western District.

Feb. 19, 1991.

As Modified April 2, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 2, 1991.

---

Thomas N. Sterchi, Robert W. Blesch, Kansas City, for appellants.

Jeffrey S. Henry, James F. Stigall, Christopher S. Gahagan, Kansas City, for respondents.

Before NUGENT, C.J., ULRICH, J., and WASSERSTROM, Senior Judge.

WASSERSTROM, Senior Judge.

Plaintiffs, an osteopathic urologist and his medical corporation, sue to recover indemnity from defendants, medical urologists and their medical corporation, for the amount paid by plaintiffs to settle a previous lawsuit against all these parties by Jerry Vickers and wife and also to recover attorneys fees paid by plaintiffs in the Vickers lawsuit. A jury found for plaintiffs on their indemnity claim, but the trial court granted defendants a new trial. By separate order, the trial court denied recovery to plaintiffs of the attorneys fees paid. Plaintiffs filed separate appeals as to each of those orders, which this court ordered

consolidated. We affirm the grant of a new trial and further order that the new trial encompass all issues including the matter of attorneys fees in the Vickers lawsuit.

Vickers had a vasectomy performed by plaintiff Witt on February 5, 1982. In the course of that operative procedure, Witt failed to wash or sterilize the scrotum, failed to wear surgical gloves or mask, and proceeded despite the presence of a rash on the scrotum.

On February 10, 1982, Vickers consulted and retained defendants for medical care and treatment, which plaintiffs' petition in the present case alleges to have been "as a result of infection relating to his vasectomy." Defendants treated Vickers with antibiotics and there was some improvement. However, Vickers continued to complain of pain in his right testicle, and exploratory surgery was decided upon. Defendant Austin testified that he found extensive scarring which could not be removed without endangering blood vessels supplying the right testicle and that removing the scarring in order to relieve pain would have left a dying testicle. He further testified that in view of that finding he proceeded to remove the right testicle.

That removal relieved the pain, but on May 4 Vickers returned with complaints of pain in his left testicle. After some treatment and unsuccessful efforts to persuade Vickers to get psychological evaluation and reference to another urologist for a second opinion, defendant Austin removed Vickers left testicle on July 12, 1982. This left Vickers castrated and under the necessity of receiving testosterone shots for the indefinite future.

Vickers originally sued plaintiffs only. Plaintiffs thereupon impleaded defendants as third-party defendants, after which Vickers amended his petition to include defendants as direct defendants in his lawsuit. Before the trial of the Vickers case, plaintiffs negotiated a settlement for $140,-000 dollars. Plaintiffs requested that defendants contribute to this settlement, but they refused. Thereupon plaintiffs paid Vickers $140,000 in full settlement of all claims and dismissed their cross-claim against defendants. However, plaintiffs thereafter filed the present lawsuit.

Defendants at every step of the present proceedings have objected to plaintiffs' petition on the ground that it fails to allege that plaintiffs were negligent in their treatment of Vickers. Plaintiffs have resisted that contention, arguing that the only issue here is defendants' negligence in the treatment of Vickers and that plaintiffs' negligence, if any, has become irrelevant. After having initially sustained plaintiffs' position, the trial court on defendants' motion for new trial held that the burden was upon plaintiffs to plead and prove that they were negligent, which they had not done. The trial court also held the verdict to be against the weight of the evidence. Although the grant of the new trial was also premised on additional grounds, the grant of a new trial should be sustained on the grounds stated, and the other grounds set forth in the trial court's order for a new trial need not be considered.

Plaintiffs also urge that they are entitled to recover $40,000 paid by them as attorneys fees in the defense of the Vickers lawsuit. For the reasons hereinafter stated, the ruling on that claim will be set aside and the matter of fees will be included as an issue to be retried at the new trial.

I.

*Verdict Against Weight of the Evidence*

■ The trial court sustained defendants' motion for a new trial on five separately numbered grounds, the first of which was: "1. The verdict was excessive and against the weight of the credible evidence." Plaintiffs agree that is usually a discretionary ground not subject of appellate review.

However, they contend that reciting ground one was not a discretionary ruling on the facts, but rather constituted a ruling on a matter of law which is reviewable. They reach that conclusion on the ingenious argument that preceding the decretal portion of its order, the trial court discussed extensively the question of whether plaintiffs were obligated to plead and prove

their own negligence. They claim that when the court then proceeded "It is therefore ordered and decreed," all five grounds stated were inextricably tied into the preceding legal discussion.

In support, plaintiffs cite *State ex rel. State Highway Commission v. Nickerson and Nickerson, Inc.,* 494 S.W.2d 344 (Mo. 1973), where the grant of a new trial because the jury verdict was against the weight of the evidence was held reviewable as being based on a legal issue. The order in *Nickerson* read that the verdict was "excessive and against the greater weight of the credible evidence *because it was based upon testimony of expert witnesses which was in turn erroneously based upon a prior knowledge of a proposed public improvement which was in fact abandoned before the admitted date of taking.*" (Emphasis supplied.)

The order in *Nickerson* is not fairly comparable to the one here. The *Nickerson* order was expressly premised on the legal reason given. Not so here. We construe the trial court order in this case as intending ground No. 1 as discretionary, unrelated to any other ground. No explanation was required for ground No. 1, and none was given.

Inasmuch as ground No. 1 is non-reviewable, the new trial could be affirmed on that basis alone without consideration of any other ground. Nevertheless, the same vexing legal issues pertaining to pleading, proof and instructions will be presented on retrial as were presented at the first trial. As guidance to the parties and the trial court, our affirmance is therefore being placed equally on the following additional grounds.

## II.

### *The Burden Upon Plaintiffs of Pleading and Proving their own Negligence*

■ Plaintiffs base their right of recovery in this case on the theory of indem-

nity recognized in *State ex rel. Tarrasch v. Crow,* 622 S.W.2d 928 (Mo. en banc 1981). In that case, the Supreme Court held that an initial tortfeasor is entitled to cross-claim against a subsequent tortfeasor for the amount of damage which the negligence of the subsequent tortfeasor added to and aggravated the initial injury. The court held that recovery in such a situation rests on the consideration that although the initial tortfeasor is liable for the total foreseeable injury to the victim whether caused by the initial or subsequent tortfeasor, nevertheless it is only fair and equitable that the subsequent tortfeasor bear the expense of that part of the total injury caused by him.

Essential to this concept is the proposition that the initial tortfeasor has a legal obligation to pay for the total injuries suffered by the victim. Unless he was negligent, he has no such obligation, has no legal relationship to the subsequent tortfeasor, and has no claim for indemnity. It therefore follows that in a suit by the initial tortfeasor against the successor tortfeasor for indemnity of what the initial tortfeasor has paid to the victim in settlement, the initial tortfeasor must establish that he was in fact liable to the victim.[1]

Missouri courts have so held in the very analogous situation of concurrent tortfeasors. In *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466 (Mo. banc 1978), the court established for the first time the principle that there could be contribution between concurrent or joint tortfeasors. Thereafter, in *Stephenson v. McClure,* 606 S.W.2d 208 (Mo.App.1980), one concurrent tortfeasor sought to invoke that doctrine against another. *McClure* settled with the victim and then pursued a cross-claim against his former co-defendant Killian for contribution. McClure alleged that the victim's injuries were the "direct and proximate result of negligence of Fred

---

1. Plaintiffs argue that *Tarrasch* did not require an allegation by the initial tortfeasor of his own liability. It must be remembered that the initial tortfeasor in *Tarrasch* was proceeding against the subsequent tortfeasor by a cross-claim, not by separate suit after settlement by the initial tortfeasor. In *Tarrasch,* there would be no recovery by the initial tortfeasor on his cross-claim unless and until the jury first found the initial tortfeasor to be liable to the victim.

T. Killian." It was held that this pleaded McClure out of court. The court held that the doctrine of *Whitehead & Kales* is premised on the claimant being liable to the injured party and that non-contractual indemnity presupposes actionable negligence on the part of both defendants.

Similarly, in *Mid–Continent News Co. v. Ford Motor Co.*, 671 S.W.2d 796 (Mo.App. 1984), the plaintiff concurrent tortfeasor settled with the victim and then pursued the other concurrent tortfeasors under the *Whitehead & Kales* doctrine. The petition denied the plaintiff's liability to the injured party and alleged that the injury was the direct and proximate result of defendants' fault. This court speaking through Judge Pritchard denied the plaintiff any right of recovery saying "a pre-requisite to recovery on such a theory is an allegation of plaintiff's own liability. *Stephenson v. McClure*, 606 S.W.2d 208."

Plaintiffs argue strenuously that the situation of concurrent tortfeasors as in the *Stephenson* and *Mid–Continent* cases differs from the situation of successive tortfeasors, and cite certain language in *Tarrasch* to that effect. However, the language cited went only to the proposition that the right of indemnity is not confined to a case of concurrent tortfeasors (as to which *Whitehead & Kales* created the right) but also extends to the case of successive tortfeasors (which stems from a doctrine which antedated *Whitehead & Kales*).

To have a proper status in order to pursue contribution from a joint or concurrent tortfeasor after settlement, the plaintiff must show that he is one of the tortfeasors. Likewise, to have a proper status to pursue indemnification from a subsequent tortfeasor, the plaintiff must show that he was the initial tortfeasor. Although the two situations are different, for present purposes they are fully analogous. *Stephenson* and *Mid–Continent* are therefore applicable.

Plaintiffs further argue on general principle that it is unreasonable and unfair to require them to prove their own fault, and that it should be enough that they paid $140,000 to settle a lawsuit which alleged them to have been at fault. The argument has considerable appeal and has persuaded some courts. *See for example Parfait v. Jahncke Service, Inc.*, 484 F.2d 296 (5th Cir.1973). However, a majority of jurisdictions has adopted the more rigorous requirement that one seeking indemnity must plead and prove that he was in fact liable to the injured party. *Industrial Risk Insurers v. Creole Production Services*, 568 F.Supp. 1323, 1328 (D.C.Alaska 1983); *Ke–Wash Co. v. Stauffer Chemical Co.*, 177 N.W.2d 5, 10–11 (Iowa S.Ct.1970); and cases cited in those opinions. By *Stephenson* and *Mid–Continent*, the Missouri courts have aligned with the majority position.

Plaintiffs argue still further that if they are required to allege their own negligence, that would plead them out of court under *Campbell v. Preston*, 379 S.W.2d 557 (Mo. 1964). That argument fails because the doctor seeking indemnity in *Campbell* was a concurrent tortfeasor, which fact barred him from indemnity under the rules prior to *Whitehead & Kales*. By way of contrast, plaintiffs here as initial tortfeasors were charged with negligence separate in time and place from the acts of negligence charged against defendants.

Plaintiffs argue still further that they should be excused from alleging and proving their own liability because they requested defendants to contribute to the settlement and defendants refused, citing in this connection *Parfait v. Jahncke Service, Inc., supra*. There are a number of important differences between *Parfait* and this case, but it suffices to say that plaintiffs asking defendants to contribute to the settlement fell far short of the "practical device" suggested in the *Parfait* decision. *Missouri Pacific Railroad Co. v. Rental Storage & Transit Co.*, 524 S.W.2d 898 (Mo.App.1975), cited by plaintiffs in this connection, also presented a distinguishable situation, in that the case cited was one of contractual indemnity.

Plaintiffs' pursuit of a mistaken legal theory in this action has led to a result far more serious than a mere technical defect

in pleading. Their insistence that the jury need be concerned only with negligence on the part of defendants to the exclusion of considering any negligence by the plaintiffs produced a perversion of the underlying doctrine, which is that the initial tortfeasor and the successor tortfeasor each bear the expense of his own respective fault. That requires a disentangling of the results of plaintiffs' negligence from that of defendants' negligence. *Tarrasch* clearly so contemplates.

The evidence here provided sufficient basis upon which the jury could find that plaintiff Witt was negligent in failing to insure a sterile field for the vasectomy, that such negligence produced infection, that such infection produced scarring, and that the scarring produced a situation requiring removal of the right testicle. The evidence also sufficed from which the jury could have concluded that Vicker's experience with the right testicle "preprocessed" him for pain on the left side and contributed psychologically to complaints of pain in his left testicle. If the jury were to so find, then plaintiffs bore at least part of the responsibility for Vickers' loss of his testicles and the $140,000 settlement should have then been apportioned in accordance with the degree of responsibility by each party.

In fact, that disentangling issue was not submitted to the jury. That could well account for the verdict providing 100% recovery to plaintiffs of the $140,000 settlement.

■ Even if we should on some lenient theory excuse the defect in plaintiffs' pleading, and even though evidence introduced on behalf of plaintiffs would support a finding that no negligence by plaintiffs contributed to Vicker's loss of his testicles, nevertheless the record would also amply support a jury finding that plaintiffs were negligent and that such negligence did contribute to Vicker's loss of his testicles. The burden was on plaintiffs to submit that question to the jury by proper instructions and to persuade the jury of their version of the facts. The failure to do so is not excusable on any theory and that failure plainly justified the granting of a new trial.

### III.

#### *Recoupment of Legal Fees*

■ Missouri law requires each litigant generally to pay his own attorneys fees unless otherwise provided by contract or statute. Plaintiffs seek to bring themselves under an exception to that general rule relating to "collateral litigation." This exception permits a plaintiff to recover the costs of prior litigation, including attorneys fees, which resulted from some wrong committed by the defendant. *Johnson v. Mercantile Trust Company National Association,* 510 S.W.2d 33, 40 (Mo.1974); *Forsythe v. Starnes,* 554 S.W.2d 100 (Mo.App. 1977).

■ Defendants argue that the collateral litigation exception has no application here because plaintiffs engaged in the prior litigation in defense of claims alleging principal negligence on their own part. In support, they cite *Krug v. Sterling Drug, Inc.,* 416 S.W.2d 143 (Mo.1967). In that case, the plaintiff used a drug manufactured by defendant Sterling and sold by a pharmacist Beaumont. At the close of all the evidence, the trial court directed a verdict in favor of Beaumont, but Beaumont filed a cross-claim against Sterling for its attorneys fees and expense of litigation. That claim was separately tried and found against Beaumont. On appeal, the Supreme Court held that Beaumont had no right of recovery, pointing out that Beaumont had incurred the attorneys fees and expenses in order to defend against allegations of its own primary negligence, separate and apart from the acts claimed to create liability on the part of Sterling. In addition, the court referred to a number of cases in which recovery of attorneys fees had been denied as between joint and concurrent tortfeasors and suggested that those cases might control the situation in *Krug;* and it should be noted that *Krug* was decided prior to the establishment of the right of contribution between joint tortfeasors in *Whitehead & Kales, supra.*

The present case must be distinguished from *Krug* for the reason that here Vickers had a right to and was attempting to hold Witt responsible not only for Witt's own acts but also for those committed by defendants. If plaintiff Witt is entitled to indemnity at all, then that right of indemnity should include a proper portion of the settlement paid and also a proportion of attorneys fees paid in order to accomplish that settlement.

However, plaintiffs' claim for reimbursement of the entire $40,000 attorneys fees may not be permitted. A substantial part of those fees, no doubt the majority, was incurred in an effort to establish Witt's freedom from negligence, and to show negligence on the part of defendants. That portion of the total attorneys fees should not be recoverable. Only that part of the attorneys fees attributable to negotiating the settlement on behalf of all defendants should be taken into account, and only that percentage should be reimbursed by defendants which the jury finds corresponds to defendants' percentage of the fault. This can be illustrated as follows: if the time records of plaintiffs' attorneys indicate that they spent $10,000 in time negotiating the settlement, and if the jury determines that defendants contributed ten percent to Vickers' total loss because of defendants' negligence, then defendants will owe plaintiffs $1,000 of the plaintiffs' attorneys fees.[2]

The grant of a new trial is affirmed. The denial of attorneys fees is set aside, and that issue will be retried as part of the new trial.

All concur.

---

**2.** This formula varies from that which would be appropriate for allocating the defendants' share of the $140,000 settlement. For the latter purpose, plaintiffs should absorb that amount, which the jury finds to be damage due to their negligence; and the amount by which $140,000 (if any) exceeds that amount is properly recoverable from defendants. In allocating the attorneys fees, the total damage to Vickers should be taken into consideration because any damages in excess of $140,000 represents an amount which may have been saved to defendants by reason of the settlement.