**MONSANTO COMPANY, Respondent,**

v.

**GOULD ELECTRONICS, INC., Appellant.**

**No. 71916.**

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 17, 1998.

Motion for Transfer to Supreme Court Denied April 20, 1998.

Application for Transfer Denied May 26, 1998.

Donald L. James, Joseph R. Swift, T. Michael Ward, St. Louis, for appellant.

Thomas M. Carney, Mark G. Arnold, St. Louis, for respondent.

ROBERT G. DOWD, Jr., Presiding Judge.

Gould Electronics, Inc. ("Gould") appeals from final judgment in favor of Monsanto Company ("Monsanto"). The court found that pursuant to a Special Undertaking between the parties, Gould had agreed to indemnify Monsanto for its own negligence. Gould argues the court erred because the language of the Special Undertaking ("Undertaking") is not sufficiently specific to indemnify Monsanto for its own negligence. We affirm in part and reverse and remand in part.

We must sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the

weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976).

On January 12, 1972, Monsanto and Gould's predecessor signed the Undertaking, an indemnity agreement in regard to polychlorinated biphenyls (PCBs). The Undertaking was required by Monsanto prior to its sale of PCBs to Gould. It follows, in pertinent part:

> Buyer hereby covenants and agrees that, with respect to any and all PCB's sold or delivered by or after the date hereof and in consideration of any such sale or delivery, buyer shall defend, indemnify and hold harmless Monsanto, its present, past and future directors, officers, employees and agents, from and against any such sale or delivery. Buyer shall defend, indemnify and hold harmless Monsanto, its present, past and future directors, officers, employees and agents, from and against any and all liabilities, claims, damages, penalties, actions, suits, losses, costs and expenses arising out of or in connection with the receipt, purchase, possession, handling, use, sale or disposition of such PCB's by, through or under Buyer, whether alone or in combination with other substances, including, without implied limitation, any contamination of or adverse effect on humans, marine and wildlife, food animal feed or the environment by reason of such PCB's.

In the fourth quarter of 1971, Gould began to manufacture the transformers at issue in this case. In the second quarter of 1972, Gould completed manufacture and delivery of the transformers. PCBs were used in the transformers as an insulating fluid. In April 1987, an incident occurred at Louisiana State University Medical Center ("LSU") involving PCBs produced by Monsanto and sold to Gould for use in a transformer. As a result, lawsuits were filed in March 1988. Monsanto was sued for negligence, as was Gould. In November 1990, Monsanto formally demanded indemnity from Gould, which did not respond. In January 1993, all plaintiffs settled, and Gould asked Monsanto to submit legal bills to its insurance carrier. In March 1993,

Monsanto submitted its bills to Gould. Thereafter, Gould refused to indemnify Monsanto. In April 1993, Monsanto filed suit against Gould for damages resulting from defense of the LSU litigation and for attorney's fees, costs, and expenses involved in prosecuting the suit to enforce the Undertaking. The court found Gould liable to indemnify Monsanto under the Undertaking and assessed attorney's fees and pre-judgment interest against Gould. This appeal followed.

In its first point, Gould asserts that an exculpatory clause in an agreement to be enforceable must provide notification that one party is indemnifying the other for its own acts of negligence in more than general terms, relying on *Alack v. Vic Tanny Intern. of Missouri, Inc.*, 923 S.W.2d 330 (Mo.banc 1996). In *Alack* the court considered a contract between a health club and an individual member, finding that the exculpatory clause of the contract was not sufficiently clear and explicit to warn of the shifting of the risk. *Id.* at 337–338. However, in a footnote, the court reserved the right to find such a clause effective if the parties involved were equally sophisticated commercial entities negotiating at arms length. *Id.* at 338 n. 4.

■ One year later, in a case involving a commercial lease, the court held that courts should not interfere with a party's right to contract. *Malan Realty Investors, Inc. v. Harris*, 953 S.W.2d 624, 627 (Mo.banc 1997), citing *Alack v. Vic Tanny Intern. of Missouri, Inc.*, 923 S.W.2d 330. In *Malan*, the court noted an important factor in construing a contract is the relative bargaining position of the parties, to prevent overreaching. *Id.* Accordingly, the court is bound to enforce the contract as written if the contract terms are unequivocal, plain, and clear, and there is no showing that the contract was procured by fraud, duress, or undue influence. *Id.*, citing *CIT Group/Equip. v. Integrated Fin. Serv.*, 910 S.W.2d 722, 729 (Mo.App.1995); and *Monticello Bldg. Corp. v. Monticello Inv. Co.*, 330 Mo. 1128, 52 S.W.2d 545, 551 (1932).

■ Here, Gould and Monsanto are sophisticated commercial entities. Gould agreed to indemnify Monsanto from "any and all liabilities, claims, damages, penalties, ac-

tions, suits, losses, costs and expenses arising out of or in connection with the receipt, purchase, possession, handling, use, sale or disposition of such PCBs by, through or under Buyer." Such terms clearly and unequivocally provide for Gould to indemnify Monsanto against any and all claims. Thus, the contract terms must be enforced absent a showing of duress, fraud, or undue influence. We find no such showing by Gould. Accordingly, this court is bound to enforce the contract. Point One is denied.

In its second point, Gould asserts that the court erred in granting Monsanto's motion for partial summary judgment on the question of liability because a genuine dispute existed. Gould asserts that Monsanto must establish that there exists no genuine dispute of material fact, relying on *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo.banc 1993). Gould contends that Monsanto failed to establish whether the transformer at issue was produced using PCBs delivered after the Undertaking became effective.

The Undertaking provides for Gould to hold Monsanto harmless for "use ... of such PCBs ... by Buyer, whether alone or in combination with other substances." In its brief, Gould stated the following relative to PCBs:

> Prior to manufacturing the transformer in question, Gould received multiple shipments of PCBs from Monsanto. Some PCBs were shipped to Gould before execution of the Special Undertaking and some were shipped after execution. These PCBs were stored together in the same bulk storage tank.

In its memorandum in opposition to Monsanto's motion for partial summary judgment, Gould stated the following:

> [B]oth men [Kuzmack and Mutschler] testified that there was no way to know whether the Askarel [fluid containing PCBs] used in any particular transformer came from any particular shipment of Askarel.
>
> The practice of ITE [Gould's Predecessor] in January of 1972 was to receive bulk shipments of Askarel by rail car and transfer that Askarel to its storage tank, along with the remaining portion of previous deliveries of Askarel and these materials were intermingled. After the different shipments were mixed together, there was no way to differentiate between them.

■ Based on Gould's statements, the court had sufficient facts to support a finding that no genuine material dispute existed regarding the PCBs. Gould confirmed that the storage tank of PCBs contained a mixture delivered both before and after January 12, 1972, the date of the Undertaking. Thus, by Gould's own admission, transformers manufactured after January 12, 1972, used PCBs delivered before and after the Undertaking. The Undertaking provides for Gould to indemnify Monsanto for use of the PCBs delivered after January 12, 1972, either alone or in combination with other substances. Thus, the Undertaking's coverage is not limited to transformers which contain PCBs delivered after January 12, 1972, exclusively. We find no genuine issue of material fact in dispute. Point Two is denied.

In its third point, Gould asserts that the court erred in sustaining Monsanto's motion to remove the case from the jury docket because it had an absolute right to a jury trial on the issue of Monsanto's damages. However, in its argument, Gould concedes the point as follows:

> Gould concedes the holding in *State ex rel. Chase Reports, Inc.*, [*State ex rel. Chase Resorts, Inc. v. Campbell*, 913 S.W.2d 832 (Mo.App. E.D.1995) ]supports Monsanto's position as well as the Circuit Court's decision to remove this case from its jury docket. Gould briefs its right to a trial by jury in order to preserve this point for submission to the Supreme Court of Missouri in the event the Court affirms the Circuit Court's Final Judgment in favor of Monsanto.

We agree that pursuant to the holding in *Chase*, the trial court did not err. Point Three is denied.

■ In its fourth point, Gould asserts the court erred in awarding attorney's fees incurred by Monsanto before it made a demand for indemnity, because it had no notice

it would be responsible for Monsanto's fees and it had no opportunity to defend Monsanto prior to its demand.

■ Generally, Missouri law requires each litigant to pay his own attorney's fees unless statute or contract provides otherwise. *Palmer v. Hobart Corp.*, 849 S.W.2d 135, 143 (Mo.App.1993), citing *Witt v. Austin*, 806 S.W.2d 63, 68 (Mo.App.1991). Reasonable attorney's fees, costs, and expenses are part of the damages sustained by the indemnitee in defending against a products liability action. *Id.* at 144. Indemnitee is under a duty to act reasonably and to refrain from compromising indemnitor's rights. *Holiday Inns, Inc. v. Thirteen–Fifty Inv. Co.*, 714 S.W.2d 597, 602 (Mo.App. W.D.1986). Construing Missouri law the Eighth Circuit has stated that whether the indemnitee's right to indemnification arises under contract or is implied by law, indemnitee has the right to recover attorney's fees reasonably incurred in the defense of a claim, provided the indemnitor has notice of the law suit and an opportunity to defend. *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 491 F.2d 192, 198 n. 9 (1974). *See also, Hales v. Green Colonial, Inc.*, 402 F.Supp. 738, 743 (W.D.Mo.1975).

In this case, the Louisiana litigation was initiated in March 1988. In April 1989, Monsanto discovered the transformers at issue had been manufactured by Gould. Nevertheless, Monsanto did not claim indemnification from Gould until November 1990. Monsanto had a duty to act reasonably to refrain from compromising Gould's rights by giving notice of the need to defend the lawsuit. Monsanto failed to do so. Thus, the court erred in awarding attorney's fees incurred prior to demand for indemnification. Point Four is reversed and remanded for findings consistent with this opinion.

In its fifth point, Gould asserts the court erred in awarding Monsanto pre-judgment interest for the period prior to March 3, 1994, the date of Monsanto's demand for a definite amount of defense costs incurred in the Louisiana litigation. Gould contends Monsanto had made no prior demand for a definite liquidated sum, as required by Section 408.020, RSMo 1994.

■ Section 408.020, RSMo 1994 permits the award of pre-judgment interest at a rate of nine percent per annum. It allows creditors to receive pre-judgment interest on liquidated claims after demand for payment is made. *Transamerica Ins. Co. v. Pennsylvania Nat. Ins. Companies*, 908 S.W.2d 173, 176 (Mo.App. E.D.1995). Although the demand need be in no certain form, it must be definite as to amount and time. *Id.* Generally, pre-judgment interest is not warranted when the debtor is unaware of the amount owed. *Id.*, citing *Wulfing v. Kansas City Southern Industries, Inc.*, 842 S.W.2d 133, 160 (Mo.App.1992). In *Transamerica*, this court found the insurance policy did not specify an amount defendant was required to pay to indemnify insured in a legal action. Nor did plaintiff's pleadings specify the amount owed, as the pleadings merely claimed plaintiff had spent more than $100,000. Thus, this court affirmed the denial of pre-judgment interest because defendant was not aware of the amount owed.

■ In this case, Monsanto initially demanded indemnification from Gould in November 1990. However, Monsanto did not specify the amount Gould owed until it submitted its bills in March 1993. Thus, pre-judgment interest is not owed prior to March 1993, because Monsanto failed to make Gould aware of the definite amount owed prior to March 1993. Point Five is reversed and remanded for findings consistent with this opinion.

Affirmed in part and reversed and remanded in part.

SIMON and HOFF, JJ., concur.