**ECONOMY FORMS CORPORATION,**
Plaintiff/Respondent,

v.

**J.S. ALBERICI CONSTRUCTION, CO.,**
INC., Defendant/Appellant.

**No. ED 77628.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 28, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 1, 2001.

Case Transferred to Supreme Court
March 20, 2001.

Case Retransferred to Court of
Appeals Sept. 25, 2001.

Original Opinion Reinstated
Oct. 5, 2001.

David G. Millar, Greggory F. Hoffmann, St. Louis, for appellant.

Gerald F. Hempstead, St. Louis, for respondent.

CRANDALL, Judge.

In this action involving interpretation of an indemnity clause in an agreement for the lease of concrete forms, defendant, J.S. Alberici Construction Co., Inc. (hereafter Alberici), appeals from the trial court's grant of summary judgment for plaintiff, Economy Forms Corp. (hereafter EFCO). We reverse and remand.

Alberici is a construction company. EFCO manufactures and leases concrete forms used in construction. These forms can be shipped to a construction site and bolted together for use. After the concrete is poured, the forms can be disassembled and returned to EFCO. In 1989, a Vice President for Alberici, Joseph Krispin, placed an order with EFCO for forms to be used at a building renovation project in the City of St. Louis. Krispin signed a contract, provided by EFCO, titled "Economy Forms Corporation Lease Agreement" (hereafter Lease Agreement) to lease concrete forms to be used for the renovation project. The contract is on a single sheet of paper with printing on both sides. On the back side of the Lease Agreement are twelve numbered paragraphs. One of these paragraphs is titled "LIABILITY," (hereafter indemnity paragraph) that provides Alberici "shall indemnify, defend and save harmless" EFCO from certain claims. At the top of the Lease Agreement's back side is a heading, "WARRANTY TERMS AND CONDITIONS." According to Krispin, he understood from this heading that the Lease Agreement's back side "had to do with product warranties offered by EFCO about the quality and condition of its concrete forms. I did not read the printed terms on the [back] side because I did not consider EFCO's product warranties to be very important to Alberici."[1]

In December 1989, Alberici's employee, Christopher Stawizynski, fell and suffered injuries while disassembling EFCO's forms at the renovation project. In addition to filing a workers' compensation claim against Alberici, Stawizynski brought a negligence and product liability action against EFCO and five other defendants. EFCO then requested that Alberici defend and indemnify EFCO against Stawizynski's action. Alberici's insurance company denied the request stating that the Lease Agreement "makes no mention" that EFCO "was seeking" Alberici to indemnify and defend EFCO on claims of EFCO's own fault or negligence. A trial was held on Stawizynski's action and the jury returned a verdict for EFCO. Alberici's insurance company denied EFCO's renewed request that Alberici pay EFCO's defense costs.

EFCO brought the present action against Alberici seeking the attorneys' fees and expenses it incurred defending Stawizynski's action. Both parties filed motions for summary judgment and agreed that there were no genuine issues of material

1. According to Krispin, Alberici paid EFCO approximately $3300.00 for leasing the forms.

fact. The trial court found that the parties were sophisticated commercial entities and the indemnity paragraph "clearly and unequivocally provided for Alberici to defend EFCO against any and all claims." The court granted EFCO's motion and awarded EFCO $412,198.88 in damages and interest. Alberici appeals from this judgment.

Summary judgment is proper to resolve claims regarding interpretation of a contractual indemnity provision. *Chehval v. St. John's Mercy Medical Center*, 958 S.W.2d 36, 37 (Mo.App. E.D.1997). Our review is essentially de novo and the key is the undisputed right to judgment as a matter of law. *Id.*

Alberici argues that the trial court erred in granting summary judgment because "under Missouri law even a broad indemnity agreement does not create a duty to indemnify against the indemnitee's own fault or negligence unless the indemnity agreement states clearly and unequivocally that the indemnitee's own fault or negligence is included." Alberici contends that the indemnity provision does not clearly and unequivocally state that Alberici agreed to indemnify EFCO against EFCO's own fault or negligence.

The indemnity paragraph provides as follows:

    14.   LIABILITY. Lessee shall be entirely responsible for and shall pay and exonerate Lessor from liability for damages arising from injury to any persons or property as the result of the use or possession of the Leased Equipment by Lessee, its agents, employees, sub-contractors or any others after its delivery by Lessor and until its return to Lessor's possession. Lessee shall also indemnify, defend and save harmless the Lessor from any such claims, founded or unfounded and whether based upon alleged negligence or otherwise.

Where parties stand on substantially equal footing, one may legally agree to indemnify the other against the results of the indemnitee's own negligence. *Kansas City Power & Light Co. v. Federal Constr. Corp.*, 351 S.W.2d 741, 745 (Mo. 1961); *see Parks v. Union Carbide Corp.*, 602 S.W.2d 188, 190 (Mo. banc 1980); *Pilla v. Tom–Boy, Inc.*, 756 S.W.2d 638, 641 (Mo.App.1988). But a contract of indemnity will not be construed to indemnify a party against loss or damage resulting from its own negligent acts unless such intention is expressed in clear and unequivocal terms. *Id; see also Missouri District Telegraph Co. v. Southwestern Bell Telephone Co.*, 338 Mo. 692, 93 S.W.2d 19, 28 (1935); *Mathis v. Jones Store Co.*, 952 S.W.2d 360, 367 (Mo.App. W.D.1997). Furthermore, "mere general, broad, and seemingly all-inclusive language in the indemnifying agreement is not sufficient to impose liability for the indemnitee's own negligence." *Kansas City Power & Light Co.*, 351 S.W.2d at 745. In the absence of a clear expression. or where any doubt exists as to the parties' intentions, Missouri courts will not construe an indemnity contract to indemnify against the indemnitee's own negligence. *Parks*, 602 S.W.2d at 190.

The indemnification paragraph fails to expressly provide that the lessee shall indemnify the lessor from the lessor's own negligence.[2] In addition, the language is

---

**2.** In *Alack v. Vic Tanny Int'l*, 923 S.W.2d 330 (Mo. banc 1996), the court considered a general exculpatory clause in a retail installment contract entered into by a health club and one of its members. The court held that the exculpatory clause was ambiguous and that the health club "did not insulate itself from liability for future negligence because the exculpa-

general and broad. Missouri courts have found indemnity language with similar characteristics as found here, insufficient where an indemnitee's own negligence is at issue.[3] We find that the language of the indemnification paragraph fails to clearly and unequivocally require Alberici to indemnify EFCO from its own negligent acts, and therefore the trial court erred in granting summary judgment for EFCO.

EFCO relies on this court's decision in *Monsanto Co. v. Gould Electronics, Inc.*, 965 S.W.2d 314 (Mo.App. E.D.1998)(relying in part on *Alack*, 923 S.W.2d at 338 n. 4). In that case, Monsanto and Gould Electronics' predecessor "signed the Undertaking, an indemnity agreement in regard to polychlorinated biphenyls (PCBs)." *Monsanto Co.*, 965 S.W.2d at 316. The indemnity agreement provided as follows:

> Buyer hereby covenants and agrees that, with respect to any and all PCB[ ]s sold or delivered by or after the date hereof and in consideration of any such sale or delivery, buyer shall defend, indemnify and hold harmless Monsanto, its present, past and future directors, officers, employees and agents, from and against any such sale or delivery. Buyer shall defend, indemnify and hold harmless Monsanto, its present, past and future directors, officers, employees and agents from and against any and all liabilities, claims, damages, penalties, actions, suits, losses, costs and expenses arising out of or in connection with the receipt, purchase, possession, handling, use, sale or disposition of such PCB's by, through or under Buyer, whether alone or in combination with other substances, including, without implied limitation, any contamination of or adverse effect on humans, marine and wildlife, food animal feed or the environment by reason of such PCB[ ]s.

*Id.* In 1971 and 1972, Gould Electronics manufactured and delivered transformers, using PCBs. *Id.* Approximately fifteen years later, an incident occurred at a medical center involving PCBs produced by Monsanto and sold to Gould Electronics for use in a transformer. *Id.* Monsanto and Gould Electronics were sued for negligence. *Id.* Gould Electronics refused to indemnify Monsanto. *Id.* Monsanto brought an action against Gould Electronics, and the trial court found Gould Electronics was required to indemnify Monsanto under the "Undertaking." *Id.* In affirming the trial court on this issue, this court found that Monsanto and Gould Electronics were sophisticated commercial entities and that Gould Electronics "agreed to indemnify Monsanto from 'any and all liabilities, claims, damages, penal-

---

tory clause did not use the word 'negligence' or 'fault' or their equivalents so that a clear and unmistakeable waiver occurred." *Alack*, 923 S.W.2d at 332. The court also held that the words negligence or fault or their equivalents "must be used conspicuously so that a clear and unmistakeable waiver and shifting of risk occurs." *Id.* at 337. The court stated that "There must be no doubt that a reasonable person agreeing to an exculpatory clause actually understands what future claims he or she is waiving." *Id.* at 337–38. In a footnote to this statement, the court noted that the case did not involve an agreement negotiated at arms length between equally sophisticated commercial entities, and that "Less precise language may be effective in such situations, and we reserve any such issues." *Id.* at 338 n. 4.

**3.** *See, e.g., Missouri District Telegraph Co.*, 93 S.W.2d at 26–28; *Howe v. Lever Bros. Co.*, 851 S.W.2d 769, 772–73 (Mo.App. E.D.1993); *Pilla*, 756 S.W.2d at 639–41; *Bonenberger v. Associated Dry Goods Co.*, 738 S.W.2d 598, 599–601 (Mo.App.1987); *Commerce Trust Co. v. Katz Drug Co.*, 552 S.W.2d 323, 325–26 (Mo.App.1977); *Paro v. Pennsylvania Railroad Co.*, 348 S.W.2d 613, 614–17 (Mo.App.1961); *Thomas v. Skelly Oil Co.*, 344 S.W.2d 320, 321–22 (Mo.App.1960).

ties, actions, suits, losses, costs and expenses arising out of or in connection with the receipt, purchase, possession, handling, use, sale or disposition of such PCBs by, through or under Buyer.'" *Id.* at 316–17. This court held that these terms clearly and unequivocally provide for Gould Electronics "to indemnify Monsanto against any and all claims." *Id.* at 317. This court concluded that the clear and unequivocal terms must be enforced because Gould Electronics failed to show duress, fraud or undue influence. *Id.*

■ Whether an indemnitee can recover for losses caused by its own negligence "depends on the language of the indemnity contract and what may be termed the subject matter thereof." *Terminal R. Ass'n v. Ralston–Purina Co.,* 352 Mo. 1013, 180 S.W.2d 693, 695 (1944). Contrary to the present case, the *Monsanto* contract is a specific agreement for indemnity. The contract recognized the potential dangerous nature of PCBs by discussing defense and indemnity for "contamination or adverse effects on humans, marine and wildlife, food animal feed or the environment in the use of PCBs alone or in combination with other substances." The intention of the parties that Gould Electronics would indemnify Monsanto from its own negligence is clear from the contract. Here, the Lease Agreement is for the lease of concrete forms with an indemnity paragraph. The Lease Agreement has eight numbered paragraphs on the front side and twelve numbered paragraphs on the back side that address several subjects.[4] Under these circumstances, the holding in *Monsanto* is not contrary to the result reached here.

■ We also agree with Alberici's contention that the indemnity paragraph does not satisfy the requirement that an indemnity provision be conspicuous. *See Burcham v. Procter & Gamble Manufacturing Co.,* 812 F.Supp. 947, 948 (E.D.Mo.1993). Before an indemnitor will be held liable for losses resulting from the indemnitee's negligence, the intention to assume such liability must appear clearly in the instrument. *Midwestern Realty Corp. v. City of Grandview,* 416 S.W.2d 35, 38 (Mo.App.1967).

EFCO asserts that the indemnity paragraph is "clearly conspicuous to a sophisticated commercial entity like Alberici and is clearly enforceable." EFCO relies on the fact that directly above where Krispin signed the Lease Agreement on the front side it states "This agreement is subject to all provisions and conditions on the reverse side including those limiting warranties," and that the title of each of the numbered paragraphs, including the indemnity paragraph, are in larger and bold type. EFCO also emphasizes the "AND CONDITIONS" language of the heading on the Lease Agreement's back side.

The "AND CONDITIONS" portion of the heading fails to render the indemnity paragraph conspicuous. This language does not alert a party that an indemnity provision is part of the agreement. The indemnity paragraph is one of twelve numbered paragraphs on the back side with unrelated titles and subject matter. The indemnity paragraph is also not highlighted or set forth differently than the other paragraphs. In addition, the title and the language of the indemnity paragraph is in

---

4. The paragraphs on the Lease Agreement are titled "LEASE," "LEASED EQUIPMENT," "RENT," "RENTAL PERIODS," "PAYMENTS," "DELIVERIES," "RE–DELIVERY," "SALES AND SERVICES," "EVIDENCE OF DELIVERIES AND REDE- LIVERIES," "CARRIERS," "TITLE AND POSSESSION," "CARE OF EQUIPMENT," "ERECTION PLANS," "LIABILITY," "EXCLUSION," "REMEDIES," "NOTICES," "ACCEPTANCE," "DEFINITION," and "WARRANTY AND CONDITIONS."

small print. The indemnity paragraph was not conspicuous.[5]

The judgment is reversed and the cause remanded.

AHRENS, P.J., and JAMES R. DOWD, J., concur.

---

5. We find it unnecessary to address Alberici's    remaining arguments.