**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0036-23

MAGNETEK, INC.,

      Plaintiff-Appellant,

v.

MONSANTO COMPANY,
PHARMACIA, LLC, f/k/a
MONSANTO, and SOLUTIA,
INC.,

      Defendants-Respondents.

_____

Argued October 17, 2024 – Decided December 17, 2024

Before Judges Rose, DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3362-17.

Ryan A. Lema (Phillips Lytle LLP) of the New York and Massachusetts bars, admitted pro hac vice, argued the cause for appellant (Galantucci & Patuto, LLC and Ryan A. Lema, attorneys; David J. Altieri and Ryan A. Lema, on the briefs).

Michael S. Stein argued the cause for respondent (Pashman Stein Walder Hayden, PC, Christopher M.

Hohn (Thompson Coburn LLP) of the Missouri and Illinois bars, admitted pro hac vice, Nicholas J. Lamb (Thompson Coburn LLP) of the Missouri and Illinois bars, admitted pro hac vice, David M. Mangian (Thompson Coburn LLP) of the Missouri and Illinois bars, admitted pro hac vice, A. Elizabeth Blackwell (Bryan Cave Leighton Paisner LLP) of the Missouri and Florida bars, admitted pro hac vice, Richard P. Cassetta (Bryan Cave Leighton Paisner LLP) of the Missouri and Illinois bars, admitted pro hac vice, Herb R. Giorgio, Jr. (Bryan Cave Leighton Paisner LLP) of the Missouri and Illinois bars, admitted pro hac vice, attorneys; Michael S. Stein, Matthew E. Frisch, Christopher M. Hohn, Nicholas J. Lamb, David M. Mangian, A. Elizabeth Blackwell, Richard P. Cassetta and Herb R. Giogio, Jr., on the brief).

PER CURIAM

In this declaratory judgment action, plaintiff Magnetek, Inc. appeals from a July 24, 2023 order dismissing its complaint without prejudice on comity grounds. Defendants Monsanto Company, Pharmacia, LLC, formerly known as Monsanto, and Solutia, Inc. (collectively, defendants or Monsanto Parties), moved for reconsideration after the first judge denied their motion and thereafter retired from the Judiciary. Having considered the successor judge's decision in light of the governing legal principles, we discern no basis to disturb the order under review. We therefore affirm.

I.

The crux of the parties' dispute is a February 7, 1972 "Special Undertaking by Purchasers of Polychlorinated Biphenyls [(PCBs)]" (Special Undertaking Agreement) between Magnetek's predecessor by merger, Universal Manufacturing Corporation (UMC), and Pharmacia's predecessor, Monsanto Company, also known as Monsanto Chemical Company (Old Monsanto). Before PCBs were banned by the federal government in 1979, see Toxic Substances Control Act, 15 U.S.C. §§ 2601-2697, Old Monsanto manufactured and sold the chemicals in bulk to various industrial customers, including UMC, for use in their finished products. By 1970, Old Monsanto began phasing out production in response to growing environmental concerns. Defendants contend thereafter, Old Monsanto limited its sale of PCBs "to certain customers," including UMC, "for use in closed electrical applications . . . but only if those customers would agree to defend and indemnify Old Monsanto against future PCB-related claims" under Special Undertaking Agreements.

Since 2009, defendants have been sued in multiple jurisdictions for PCB-related environmental and personal injury claims.[1] In August 2016, defendants

---

[1] Solutia did not manufacture or sell PCBs. The record reveals "[i]n 1997, Solutia was spun off from Old Monsanto," which "assigned certain rights to Solutia, including the rights to enforce the Special Undertaking Agreements." Thereafter, the bankruptcy court granted Solutia's petition for reorganization

demanded a defense and indemnification from Magnetek for "all current and future PCB-related litigation wherein Old Monsanto is, or will be, named as a defendant" pursuant to the parties' Special Undertaking Agreement.

In December 2016, defendants sent Magnetek a follow-up letter advising of new PCB-related litigation, settlements, and judgments. In this letter, defendants indicated their preference for informally resolving the dispute regarding the parties' responsibilities under the Special Undertaking Agreement to permit a cost-effective solution that would "allow greater flexibility in crafting a solution." Thereafter, defendants scheduled an informational meeting for all purchaser companies, including UMC, facing potential liability under the Special Undertaking Agreements. Magnetek agreed to attend the meeting in St. Louis.

On May 12, 2017, four days before the informational meeting, Magnetek filed the present complaint against defendants seeking a declaratory judgment that the Special Undertaking Agreement was void and unenforceable. Magnetek neither served the complaint nor informed defendants of its filing. Just prior to

---

under Chapter 11. See 11 U.S.C. §§ 1101-1195. On May 23, 2023, the same day oral argument was held on defendants' reconsideration motion in the present matter, a defendant in the Missouri action moved to reopen the Solutia bankruptcy. The disposition of that application is not contained in the motion record.

the May 16 meeting, counsel for the Monsanto Parties apparently received notification of Magnetek's lawsuit via the New Jersey Judiciary's eCourts system. When confronted about the filing, Magnetek's attorney "confirmed that the lawsuit had been filed, but noted it had not been served, and stated that the lawsuit was a 'placeholder.'" Magnetek's counsel did not attend the informational meeting.

Less than four months later, on September 1, 2017, the Monsanto Parties initiated an action in the Circuit Court of St. Louis County, Missouri, asserting claims for negligence, negligence misrepresentation, and breach of the Special Undertaking Agreement. Defendants sought damages and a declaratory judgment.

Shortly thereafter, Monsanto Company and Solutia, Inc. moved before the first motion court to dismiss the present action pursuant to Rule 4:6-2(b). The same day, those defendants, joined by Pharmacia, LLC, moved to dismiss the complaint for failure to join indispensable parties under Rule 4:6-2(f). Defendants also asserted comity principles in support of their motions.

In October 2017, the first motion judge denied defendants' applications, but permitted jurisdictional discovery. The judge reasoned "a more robust

A-0036-23

record" was necessary to decide the parties' dispute concerning defendants' corporate structure.

After defendants answered Magnetek's complaint, the parties engaged in jurisdictional and limited fact discovery in the present matter. In December 2017, Magnetek moved to dismiss the Missouri action.

In early 2018, the parties sought a stay of the actions pending in both states to explore a global resolution. Because the court in this state could not electronically stay a case, the case was administratively dismissed without prejudice. In view of the parties' mediation efforts, pursuant to Missouri practice, Magnetek's motion was not heard until 2020. In the absence of Magnetek's request, the court neither transcribed oral argument nor issued a decision on the motion.

The present action laid dormant until August 1, 2022, when the parties were notified of a November 28, 2022 trial date. The parties jointly moved before the first motion judge to adjourn the trial date. Defendants also renewed their prior motions to dismiss the complaint. In the alternative, they moved to stay the present action on comity grounds.

On January 20, 2023, immediately following oral argument, the judge issued a terse oral decision denying all requested relief. Pertinent to this appeal,

the judge emphasized the present action "was first filed in New Jersey." The judge noted "the parties have been involved in other litigation that is ancillary or similar, or may even have some of the same issues that we have in New Jersey." But the judge found the present action was "separate and discrete," concluding:

> This court had this case first concerning this issue about a New Jersey corporation that was sold PCBs and that there was a special undertaking by a company that did business clearly in New Jersey and . . . the successor cannot now just escape and run away and say we don't have to worry about New Jersey anymore or its jurisdiction, because we bought this and we only get the assets, but we don't get any of the liabilities. Again, as I said, that's no[t] how any of this works and the motions therefore are denied and we will retain jurisdiction.

Defendants moved for reconsideration on February 10, 2023.

In the interim, on August 3, 2022, defendants filed an amended petition in the Missouri action, naming five additional defendants which signed similar Special Undertaking Agreements. The Missouri court denied Magnetek's renewed motion to dismiss or stay the action in October 2022. In December 2022, defendants tendered additional PCB lawsuits to Magnetek.

The five additional defendants moved to dismiss the Missouri action. In February 2023, one of these defendants removed the case to federal court. The

<span>A-0036-23</span>

Monsanto Parties moved to remand the action to Missouri state court,[2] and the defendants in that action, including Magnetek, moved to dismiss the action.

In view of the first motion judge's retirement, Judge Mary F. Thurber assumed management of the New Jersey action. Following oral argument on May 3, 2023, the judge reserved decision. In her cogent written decision that followed, the judge granted defendants' reconsideration motion on comity grounds.

Pertinent to the issues raised on appeal, Judge Thurber cited the governing law and recognized as the successor judge, she

> "d[id] not sit in appellate review of the decision of [her] predecessor and [retired] colleague." Rather, as the judge now responsible for this matter and presented with the motion, the court simply considers whether it would be consonant with the interest of justice to revisit those orders and to grant either a dismissal or stay.

Turning to the merits, the judge thoroughly addressed the comity issue in view of our Supreme Court's seminal decision in Sensient Colors, Inc. v. Allstate Ins. Co., 193 N.J. 373, 378 (2008), and our opinion, decided the following

---

[2] After the present motion was decided, the district court in Missouri granted the Monsanto Parties' motion to remand the case to Missouri state court. Monsanto Co. v. Magnetek, Inc., No. 4:23CV204, 2024 WL 449805, at *1 (E.D. Mo. Feb. 6, 2024). Apparently, one of the defendants appealed, oral argument was held on September 26, 2024, and a decision has not yet been issued.

A-0036-23

month, in <u>Century Indemnity Co. v. Mine Safety Appliances Co.</u>, 398 N.J. Super. 422 (App. Div. 2008). Acknowledging the strong presumption in favor of a first-filed action, the judge nonetheless noted the rule is not inflexible and can be rejected when special equities exist.

Notably, the judge recognized the order under review in <u>Century Indemnity</u> similarly dismissed without prejudice a plaintiff's first-filed declaratory judgment action whereas "the <u>Sensient</u> motion had been directed at the second-filed action." The judge correctly observed we found some of the <u>Sensient</u> factors were inapplicable "but many of the concepts were relevant." <u>See</u> <u>Century Indem.</u>, 398 N.J. Super. at 428.

In the present matter, the judge found both actions involved the same parties, "but the Missouri action also names the five other [i]ndemnitors and seeks a global resolution." The judge elaborated: "Magn[e]tek can seek and obtain in Missouri resolution of all issues it raises here, as well as cross-claims against other potential [i]ndemnitors. The Monsanto Parties cannot obtain, in this declaratory judgment action, the relief they seek in Missouri against all [i]ndemnitors."

Noting it was unclear whether there was "any substantive difference" between the laws of each state, the judge nonetheless believed "the

enforceability of the Special Undertakings [Agreement] will . . . be governed by Missouri law."  Because the record revealed Old Monsanto was the last party to sign the agreement – and did so in Missouri – the judge found "[t]he law of the place of contracting likely applies."  To support her decision, the judge cited Monsanto Co. v. Gould Electronics, Inc., 965 S.W. 2d 314, 316 (Mo. Ct. App. 1998), which "already applied Missouri law in a case concerning the enforceability of the Special Undertaking Agreement."

Judge Thurber also conducted a forum non conveniens analysis and found the doctrine either "favor[ed] Missouri, or neither state."  The judge reasoned:

> The contract was made in Missouri.  New Monsanto and Solutia have their principal places of business in Missouri.  Magn[e]tek has no connection to New Jersey other than that its predecessor operated here when it purchased and used Old Monsanto's PCBs.  Magn[e]tek is a Delaware corporation with its principal place of business in Wisconsin.  No party has suggested to the court that witnesses or evidence are in New Jersey.  No deference is due Magn[e]tek's choice of a forum that is neither its place of incorporation nor its principal place of business.

The judge further recognized:  "There are more than 180 cases now pending against the Monsanto Parties for which it seeks defense and indemnity, 103 of

10

which are pending in Missouri, and <u>none of which is pending in New Jersey</u>."[3] (Emphasis added).

Judge Thurber also considered Magnetek's argument, reprised on appeal, that it did not "'race[] to the courthouse' to file first because some of the underlying lawsuits against the Monsanto parties had been pending for years," yet defendants did not demand a defense and coverage until August 2016. Rejecting Magnetek's contentions, the judge was persuaded by the timing of the complaint "compared to the communications about attempted resolution." Specifically, the judge considered the Monsanto Parties' attempts to reach a global settlement with all purported indemnitors under the Special Undertaking Agreements by scheduling the May 16, 2017 informational meeting – and Magnetek's May 1, 2017 response that it would attend the meeting followed by its filing of the present "placeholder" action. The judge concluded, "The possibility, even probability, that Magn[e]tek filed preemptively in a forum with

---

[3] For the first time on appeal, Magnetek cites <u>New Jersey Department of Environmental Protection v. Monsanto Co.</u>, No. GLO-L-800-22, a New Jersey action pending against defendants since August 2022. Ordinarily, because the case was not presented to the motion judge for consideration, it would be inappropriate for consideration on appeal. <u>See</u> <u>Zaman v. Felton</u>, 219 N.J. 199, 226-27 (2014). Were we to consider this single pending New Jersey action, however, we are satisfied its pendency does not outweigh the volume of cases pending in Missouri.

which it had no connection further weighs in favor of dismissal in favor of Missouri."

Citing federal case law, Judge Thurber further found "the first-filed rule often gives way in federal court when, as here, the first-filed case seeks declaratory judgment and the second-filed suit seeks affirmative relief." But the judge was most persuaded by the Missouri court's conclusion – premised on the same arguments raised in the present action – that Missouri was the proper forum for the parties' disputes.[4]

On appeal, Magnetek first maintains it was improper for Judge Thurber to consider, much less grant, defendants' reconsideration motion because it constituted a lateral appeal of the decision of a Law Division judge to another, co-equal Law Division judge. Magnetek also challenges the merits of the motion judge's decision, contending defendants failed to establish special equities warranted a departure from the first-filed rule and the present matter will be resolved more efficiently in this state.

II.

---

[4] Having dismissed Magnetek's complaint on comity grounds, Judge Thurber declined to decide defendants' argument that New Jersey lacked personal jurisdiction over the parties and Magnetek failed to join indispensable parties.

A.

We begin with our standard of review of a reconsideration order. Ordinarily, absent a mistaken exercise of discretion, we will not disturb a trial court's order on a motion for reconsideration. See Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). An abuse of discretion arises when a decision was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Servs., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Unlike reconsideration motions to alter or amend final judgments and final orders, which are governed by Rule 4:49-2, a motion for reconsideration of an interlocutory order – as was the dismissal order here – is governed by the "far more liberal approach" set forth in Rule 4:42-2. Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021). "Rule 4:42-2 declares that interlocutory orders 'shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice.'" Ibid. (quoting R. 4:42-2).

We have long held a trial court may reconsider and vacate an interlocutory order if the court determines the matter was decided incorrectly. See Johnson

13

v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257, 263-64 (App. Div. 1987) (holding a "trial court has the inherent power, to be exercised in its sound discretion, to review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment"). "Nonetheless, relitigation of an interlocutory order before successive judges of coordinate jurisdiction is generally disfavored." Akhtar v. JDN Props. at Florham Park, LLC, 439 N.J. Super. 391, 399 (App. Div. 2015); see also R. 4:42-2(b) (requiring "[t]o the extent possible, application for reconsideration shall be made to the trial judge who entered the order"). We have "expressly disapprove[d] the practice of so called 'lateral appeals' whereby litigants dissatisfied with an interlocutory order by one trial judge seek its overturn or modification by motion to another trial judge." Lewis v. Preschel, 237 N.J. Super. 418, 422 (App. Div. 1989).

In the present matter, there is no evidence in the record to suggest defendants sought a lateral appeal of the January 20, 2023 orders. Because the first motion judge retired shortly after he issued the denial orders, defendants' reconsideration motion was assigned to his successor. Contrary to Magnetek's contentions, in support of its reconsideration motion, defendants did not merely reiterate the arguments raised in its prior motions. Defendants expressly challenged the first judge's decision because it "ignored principles of comity,

special equities, and advancements in the Missouri action" and lacked "a reasoned legal analysis premised on findings from the record."

Mindful that a court on reconsideration "does not sit in appellate review of the decision of its predecessor and colleague," Judge Thurber considered whether, in the interest of justice, her retired colleague's orders should be revisited. The initial motion judge summarily denied defendants' renewed motions to dismiss or stay the New Jersey action, without conducting a comity analysis under Sensient Colors. By contrast, Judge Thurber squarely addressed the issues raised pursuant to the governing legal principles. We therefore conclude the judge properly reconsidered the interlocutory orders "in the interest of justice" under Rule 4:42-2.

## B.

We turn to the merits of the Judge Thurber's decision, recognizing the decision to grant a comity dismissal or stay generally lies within the trial court's sound discretion. Sensient Colors, 193 N.J. at 390. We similarly review the court's decision whether special equities exist. Exxon Rsch. & Eng'g Co. v. Indus. Risk Insurers, 341 N.J. Super. 489, 505 (App. Div. 2001).

Our Supreme Court has provided the framework for applying comity principles to lawsuits simultaneously pending in multiple jurisdictions. Sensient

Colors, 193 N.J. at 386. "New Jersey has long adhered to 'the general rule that the court which first acquires jurisdiction has precedence in the absence of special equities.'" Ibid. (quoting Yancoskie v. Del. River Port Auth., 78 N.J. 321, 324 (1978)). Accordingly, "the first-filed rule is not an inflexible doctrine." Id. at 387. "Special equities are reasons of a compelling nature that favor the retention of jurisdiction by the court in the later-filed action." Ibid.

Special equities have been found under a variety of circumstances, including where: (1) "one party has engaged in jurisdiction shopping to deny the other party the benefit of its natural forum"; (2) a party has, "in bad faith . . . filed-first" anticipating an "'imminent suit in another, less favorable, forum'"; (3) the second action implicates "significant state interests" and deferring to the first action "'would contravene the public or judicial policy'"; or (4) proceeding with the first-filed action "would cause 'great hardship and inconvenience'" to a party in the first action, "and no unfairness to the opposing party" in the second action. Id. at 387-89 (quoting EEOC v. Univ. of Pa., 850 F.2d 969, 976 (3d Cir. 1988), aff'd on other grounds, 493 U.S. 182 (1990), then Philadelphia v. Austin, 86 N.J. 55, 64 (1981), and then O'Loughlin v. O'Loughlin, 6 N.J. 170, 180-81 (1951)).

A-0036-23

"Whether special equities exempt a court from deferring to a first-filed action depends on a fact-specific inquiry that weighs considerations of fairness and comity." Id. at 389-90. A comity determination should be based on a "combination of the special equities." Id. at 397.

Following the Court's decision in Sensient Colors, we affirmed the dismissal of a first-filed New Jersey action, concluding the special equities weighed in favor of resolving the subsequently filed dispute in Pennsylvania. Century Indem., 398 N.J. Super. at 438-41. We noted dismissal was warranted when an action is commenced as a preemptory action to obtain a forum advantage. Id. at 438. Pertinent to this appeal, we recognized "[t]his principle has been utilized in other jurisdictions to dismiss first-filed preemptory declaratory judgment actions instituted to obtain a forum advantage, so as to permit the 'natural plaintiff's' action to proceed in the plaintiff's chosen court." Ibid.

Based on our review of the motion record, we are satisfied Judge Thurber's comity analysis comported with the Sensient Colors framework. Correctly recognizing "[t]he first-filed rule is not inflexible or dogmatic," the judge conducted a fact-specific analysis finding certain special equities overcame the presumption in favor of the first-filed action. Those special equities include

Magnetek's "placeholder" lawsuit surreptitiously filed days before the parties' informational meeting; the Special Undertaking Agreement likely will be governed by Missouri law; as the "natural plaintiff" in Magnetek's declaratory judgment action, the Monsanto Parties should select the forum to determine the parties' dispute; Magnetek neither is a New Jersey corporation nor has its principal place of business in this state; most actions were pending in Missouri where a more complete resolution of the issues was likely; and the Missouri court declined Magnetek's dismissal motion on comity grounds.

Having considered Magnetek's contentions in view of the applicable law, we conclude they lack sufficient merit to warrant further discussion in our written opinion.  R. 2:11-3(e)(1)(E).  We affirm substantially for the reasons expressed by Judge Thurber in her well-reasoned decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0036-23