942 A.2d 95 (2008)
398 N.J. Super. 422
CENTURY INDEMNITY COMPANY, As Successor to CCI Insurance Company, As Successor to The Insurance Company of North America, Century Indemnity Company, as Successor to CIGNA Specialty Company, f/k/a California Union Insurance Company, and U.S. Fire Insurance Company With Respect to U.S. Fire Insurance Company Policy No. 5220070479 Only, Plaintiffs-Appellants,
v.
MINE SAFETY APPLIANCES COMPANY, Defendant-Respondent, and
Travelers Casualty & Surety Company, f/k/a Aetna Casualty & Surety Company, AIU Insurance Company, American Home Insurance Company, American International Underwriters Insurance Company, a/k/a AIU Insurance Company, Birmingham Fire Insurance Co., Granite State Insurance Co., Insurance Company of the State of Pennsylvania, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, American Casualty Insurance Company, Columbia Casualty Insurance *96 Company, Continental Casualty Insurance Company, Continental Insurance Company, Harbor Insurance Company, Allianz Underwriters Insurance Co., American Insurance Company, American Reinsurance Company, Argonaut Insurance Company, Associated International Insurance Company, Employers Mutual Insurance Company, Federal Insurance Company, First State Insurance Company, Hartford Accident & Indemnity Company, Twin City Fire Insurance Co., North River Insurance Company, Northbrook Insurance Company, North Star General Insurance Company, Puritan Insurance Company, St. Paul Travelers, f/k/a The Travelers Insurance Company, U.S. Fire Insurance Company, Employers Insurance Company of Wausau, Zurich-American Insurance Co., John Doe Insurance Companies 1-20 and Pennsylvania Property And Casualty Insurance Guaranty Association, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 2007.
Decided February 26, 2008.
*97 Jonathan H. Pittman (Crowell & Moring) of the D.C. bar, Washington, DC, admitted pro hac vice, argued the cause for appellants (Siegal, Napierkowski & Park, and Mr. Pittman, attorneys; Mr. Pittman, of counsel; Melvin R. Shuster, on the brief).
Jay M. Levin, Philadelphia, PA, argued the cause for respondent (Reed Smith, attorneys; Mr. Levin and Kellie A. Lavery, on the brief).
Before Judges AXELRAD, PAYNE and MESSANO.
The opinion of the court was delivered by
PAYNE, J.A.D.
In its recent decision in Sensient Colors, Inc. v. Allstate Ins. Co., 193 N.J. 373, 939 A.2d 767 (2008), the New Jersey Supreme Court discussed, at length, the principles of comity applicable to its determination to reverse, as an abuse of discretion, a trial court order dismissing an insured's later-filed New Jersey insurance coverage action in favor of an insurer's first-filed New York action, when the underlying dispute concerned coverage for New Jersey environmental contamination claims. We are called upon in the present matter to apply allied principles, but in the far different context of an appeal from the dismissal of a first-filed action instituted by an insurer to determine allocation of coverage for nation-wide product liability claims.
In this case, plaintiff, Century Indemnity Company,[1] appeals from an order dismissing, without prejudice, its first-filed New Jersey declaratory judgment action, instituted to determine the coverage obligations of Century Indemnity, thirty-two other named defendant insurers, and the Pennsylvania Property and Casualty Insurance Guaranty Association to the insured, Mine Safety Appliances Company (MSA), a manufacturer of allegedly defective respiratory protection equipment that users claim caused them to contract respiratory illnesses such as silicosis, asbestos-related diseases, and coal workers' pneumoconiosis. A later-filed breach of contract action by MSA against Century Indemnity presently is being actively litigated in Pennsylvania, the state of incorporation and principal place of business of both Century Indemnity and MSA.

I.
The decision in Sensient provides an analytical framework for our consideration of this appeal. Sensient arose from a coverage dispute between Zurich-American Insurance Company and its insured, Sensient Colors, Inc., arising from environmental contamination emanating from a former Camden factory site owned by Sensient, which had spawned a clean-up action by the U.S. Environmental Protection Agency (EPA) and the EPA's subsequent demand for reimbursement of cleanup costs, as well as a civil law suit by an adjacent property, owner. While offering coverage to Sensient under a reservation *98 of rights, Zurich simultaneously filed a coverage action against Sensient and its other insurers in a New York trial court, to which Sensient responded by filing a similar action in New Jersey. Following dismissal of the New Jersey action on the motion of Zurich and others, and reversal by us in a reported opinion, Sensient Colors Inc. v. Allstate Ins. Co., 388 N.J.Super. 374, 908 A.2d 826 (App.Div.2006), the Supreme Court granted certification to review whether the trial court's dismissal on comity grounds was proper. Id. 189 N.J. 649, 917 A.2d 788, 789 (2007).
Following its review, the Court agreed with us that the trial court had misused its discretion in dismissing the later-filed New Jersey action. 193 N.J. at 383, 939 A.2d 767 (recognizing discretionary nature of determination) and 31 (finding an abuse of discretion by the trial court). In reaching that conclusion, the Court reaffirmed "`the general rule that the court which first acquires jurisdiction has precedence in the absence of special equities,'" id. at 386, 939 A.2d 767 (quoting Yancoskie v. Del. River Port Auth., 78 N.J. 321, 324, 395 A.2d 192 (1978)), and it recognized that "any comity analysis should begin with a presumption in favor of the earlier-filed action." Id. at 387, 939 A.2d 767. However, the Court also recognized that the first-filed doctrine was not to be inflexibly applied, and that it could be overcome by those special equities that it defined as "reasons of a compelling nature that favor the retention of jurisdiction by the court in the later-filed action." Id. at 387, 939 A.2d 767.
The Court held that to obtain a stay or dismissal of a second-filed action on the basis of comity, a movant must initially establish that there is a first-filed action in another jurisdiction that involves substantially the same parties, claims and legal issues. Id. at 391, 939 A.2d 767. Then, the party seeking to preserve the second-filed action must demonstrate the existence of one or more special equities that overcome the presumption favoring the first-filed suit. Id. at 392, 939 A.2d 767.
When applying these factors, the Court declined to definitively determine whether the New York and New Jersey actions were substantially similar, a decision that was not required as the result of the Court's decision to preserve the New Jersey case. Id. at 393, 939 A.2d 767. Instead, the Court focused on the special equities presented: primarily, New Jersey's strong public policy interest in remediating environmental contamination within its borders and ensuring the adequacy of funds for that purposeinterests that the Court determined, in light of the opposing approaches of New York and New Jersey to the enforcement of insurance policy pollution exclusion clauses, could only be reliably protected through the application, by New Jersey's courts, of New Jersey decisions that declined to give effect to such exclusions. Id. at 394-98, 939 A.2d 767.
The Court noted our suggestion that Zurich's "jockeying for the more hospitable insurance laws of New York best explains its selection of New York as its favored forum," id. at 396, 939 A.2d 767, and it considered Zurich's conduct in preemptively filing suit, without warning, along with factors applicable to a forum non conveniens analysis and a recognition of the more advanced status of the New Jersey action, as additional special equities relevant to its determination that the decision of the trial court to dismiss the second-filed New Jersey action was an abuse of discretion. Id. at 393, 396, 939 A.2d 767.

II.
As we have noted, the matter before us differs from Sensient because it does not *99 concern coverage for environmental contamination in this State, but rather, coverage for product liability claims across the country. Some of those claims undoubtedly, have been instituted by New Jersey residents. However, we have not been informed of their number, and because the existence of substantial group of New Jersey claimants might provide a public policy basis for retaining jurisdiction in New Jersey akin to that recognized in Sensient, we presume the number is quite small.[2]
The present matter also differs from Sensient in that MSA's motion to dismiss was directed at the first-filed, not the second-filed action. Thus, principles of comity as traditionally applied in an attack on the second-filed suit are not directly at issue. New Jersey need not give deference to Pennsylvania in the circumstances presented. Nonetheless, many of the concepts that informed the Court's decision in Sensient are relevant in the present context, in that they provide a useful framework for analysis of a circumstance in which two competing actions are pending, and a court is called upon to determine which should prevail.
In this appeal, like that in Sensient, a conflict in insurance law underlies the dispute and, we are satisfied in concluding, it provided the motivation for Century Indemnity's determination to file a preemptive coverage action in New Jersey. In the latent injury context relevant here, both New Jersey's and Pennsylvania's courts have adopted a continuous trigger from initial exposure, through exposure in residence, to manifestation or suit to determine which carriers are on the risk in connection with latent injury claims. See Owens-Illinois, Inc., v. United Ins. Co., 138 N.J. 437, 478-79, 650 A.2d 974 (1994); J.H. France Refractories Co. v. Allstate Ins. Co., 534 Pa. 29, 626 A.2d 502, 506-07 (1993). The two states differ, however, as to the method adopted for allocation of the risk among triggered carriers. New Jersey has rejected a joint-and-several allocation, Owens-Illinois, supra, 138 N.J. at 459-62, 650 A.2d 974, in favor of a pro-rata allocation that takes into consideration both the insurer's time on the risk and the degree of risk that it assumed. Id. at 462-64, 479, 650 A.2d 974. In a primary insurance context, Pennsylvania has embraced a joint-and-several allocation approach, whereby an insured may designate any of its triggered carriers to respond to a claim or claims until policy limits are exhausted, and it becomes the obligation of that carrier to seek contribution from other triggered carriers, either through enforcement of policy "other insurance" clauses, or as an equitable remedy. J.H. France, supra, 626 A.2d at 507-09. The principal differences between the two approaches are (1) under a pro-rata approach, the insured bears the risk of loss in periods in which no insurance was in force, whereas under the joint-and-several approach, the insured bears no risk until coverage is wholly exhausted, and (2) under a pro-rata approach, the coverage obligations of triggered carriers are determined at the outset, whereas under a joint-and-several approach, a designated triggered carrier can spread the risk only by paying the claim and then seeking contribution from other triggered carriers.
A procedural difference also distinguishes New Jersey from Pennsylvania. We have been informed that, as the result of the Pennsylvania Supreme Court's decision in Vale Chemical Co. v. Hartford Accid. *100 & Indem,. Co., 512 Pa. 290, 516 A.2d 684 (1986), MSA's underlying product liability claimants must be joined as indispensable parties to any action by MSA or its insurers seeking a declaration with respect to the carriers' coverage obligations. Because approximately 23,000 such claimants presently exist, we have been told that Vale's requirements provide an insurmountable barrier to institution of a declaratory judgment action in Pennsylvania. New Jersey lacks Vale's joinder requirement.

III.
With this background, we turn to the facts of this matter. As we stated previously, MSA is a Pennsylvania corporation that maintains its principal place of business in Allegheny County, Pennsylvania. Its business includes the manufacture of respiratory protection products, which it does primarily in Pennsylvania. Although MSA operates a factory in New Jersey, the factory's product output is different.
In the early 1980s, suits commenced against MSA, primarily seeking damages for respiratory illnesses allegedly caused by defects in MSA's protective equipment. All primary commercial general liability (CGL) coverage purchased by MSA has been exhausted in the payment of such claims, as has some of MSA's low-level excess coverage. Additionally, some of MSA's carriers have been declared insolvent, thereby triggering such protections as are afforded by the Pennsylvania Property and Casualty Insurance Guaranty Association and otherwise leaving gaps in coverage.
Century Indemnity, like MSA, is a Pennsylvania corporation with its principal place of business in Philadelphia. It is `a successor in interest to CCI Insurance Company, as successor to the Insurance Company of North America (INA). Century Indemnity is also successor to CINA Specialty Company, formerly known as California Union Insurance Company (CalUnion). INA[3] wrote excess blanket catastrophe liability insurance coverage that is potentially applicable to the present claims against MSA during the period from December 8, 1961 to April 1, 1971. CalUnion[4] wrote potentially applicable excess umbrella coverage in the amount of $4 million for the policy period from April 1, 1979 to April 1, 1980. The insurance coverage chart provided at our request in connection with this case, although heavily redacted, indicates that the excess INA and CalUnion coverage now at issue commenced at approximately the $2 million level and extended approximately to the $5 million level or somewhat above that level. North River Insurance Company, a New Jersey corporation with its principal place of business in Morristown, wrote coverage during most of the years between 1975 to 1986 at the next higher excess level, and it wrote considerable coverage at levels well above that.
In 1994, the most recent voluntary cost-sharing agreement was reached between MSA and certain of its insurers, including Century Indemnity. Although that agreement remained in effect for a substantial *101 period of time, eventually Century Indemnity, which claims to have made over $44 million in primary and excess defense and indemnity payments, terminated the agreement in 2005. Since that time, attempts to broker a new agreement have been largely unsuccessful. However, in a meeting held on November 18, 2005, Century Indemnity proposed to pay thirty-five percent of MSA's reasonable defense costs in connection with certain claims incurred in the second half of 2005. Its offer was accepted, and approximately $1.8 million was paid on those claims.
Attempts to further resolve insurance coverage issues spawned correspondence and meetings between MSA, its counsel, Century Indemnity, its claims administrator Resolute Management Inc., and representatives of a limited number of other carriers.[5] By letter dated April 10, 2006, MSA's Director of Litigation, William J. Berner, wrote to representatives of Century Indemnity and four other insurers,[6] indirectly invoking J.H. France, when stating:
There are many reasons that the cost-sharing negotiations have failed to produce agreement on new percentage allocations. Most notably, to varying degrees, each of your companies has approached the negotiations as if your contractual obligations to MSA are somehow mitigated by the fact that MSA has contracts with the other insurers. That, as I'm sure you know, simply is not the case. Rather, each of your companies owes MSA 100% of the, defense and indemnity of any claim that triggers one or more of your policies.
While still encouraging further negotiations, Berner then stated that MSA would now concentrate on "separate discussions with each of your companies."
At a meeting held at the offices of its counsel in Philadelphia on April 26, 2006, MSA made a demand on Century Indemnity for defense and indemnification pursuant to J.H. France. According to the certification of Lawrence E. Flatley, one of MSA's counsel, MSA demanded that Century Indemnity reimburse MSA for $5.5 million in 2005 defense costs; agree to pay an estimated $1.5 million for first-quarter 2006 defense costs and an estimated $4.5 million for defense costs in the remainder of 2006; and assume MSA's estimated indemnity obligations for 2006 of $23 million. MSA also stated at the meeting that it would continue to circulate letters allocating expenses among triggered carriers, as had been its practice. No response was given by Century Indemnity to MSA's" demand at the meeting.
On May 3, 2006, in response to an e-mail from Flatley regarding Century Indemnity's position, Mark Muth, General Counsel for Resolute Management, stated:
Larry, your e-mail has been forwarded to me for response. I understand that *102 during an April meeting MSA asserted a right to "pick and choose" the insurance coverage applicable to its long-tail liabilities and chose Century to provide defense and indemnification relating to those liabilities. Before we issue our response, which is based on my understanding of what happened at the meeting, could you please clarify MSA's position? Are you expecting further discussions concerning cost sharing, which we would be happy to participate in following your withdrawal of the tender, or are You expecting discussions concerning our assumption of MSA's defense?
In response to Muth's e-mail, MSA memorialized its position in letters to Resolute Management personnel dated May 8 and 10, 2006, in which it again invoked its rights pursuant to J.H. France, but agreed to assist Century Indemnity in obtaining contribution from other triggered insurers. Resolute Senior Claims Handler Silpe's answer, dated May 19, 2006, included a discussion of the applicability of J.H. France, and stated her position that, even if Pennsylvania law were assumed to apply, that decision concerned only primary insurance and was inapplicable to Century Indemnity's excess insurance policies, in which the obligation to pay defense costs was eliminated or sharply curtailed. However, she continued: "We do agree that policy XBC 76071, in effect from April 1, 1970 to April 1, 1971 and subject to its terms and conditions, provides for a duty to defend MSA in addition to limits." She therefore accepted MSA's defense under that policy, pursuant to a reservation of rights and a further reservation of the right to control MSA's defense, through a transfer of all files to a designated Mississippi firm, which would assume the role of national coordinating counsel.[7]
On May 19, 2006, the same date as Silpe's letter accepting MSA's defense, Century Indemnity filed suit in New Jersey Superior Court against MSA, its thirty-two other carriers, and the Pennsylvania Property and Casualty Insurance Guaranty Association. An amended complaint was filed on May 22, 2006. In it, Century Indemnity sought to limit its duties of defense and indemnification, if any, to its pro rata share of reasonable costs incurred, thereby tacitly invoking Owens-Illinois.
On June 9, 2006, MSA filed a breach of contract action against Century Indemnity in the Pennsylvania Court of Common Pleas for Allegheny County. In it, MSA acknowledged the filing of the New Jersey action, but alleged that the New Jersey complaint had been filed in bad faith, the parties and the litigation had no relationship to or contact with New Jersey, and Century Indemnity had filed suit solely to prevent MSA from instituting an action in Pennsylvania and to take advantage of more favorable New Jersey coverage allocation law. On June 30, 2006, MSA followed the filing of its action with a motion to dismiss Century Indemnity's New Jersey complaint. The motion was heard on September 8, 2006, and granted in a written opinion of September 20, 2006. An order of dismissal was filed on October 13, 2006.
While the appeal from the New Jersey court's order of dismissal has been pending, the Pennsylvania action has progressed. Shortly after the action was filed, Century Indemnity filed preliminary objections to MSA's complaint, seeking its *103 dismissal or stay in favor of the New Jersey case on comity grounds. The motion was denied on December 19, 2006. In response to MSA's breach of contract complaint, Century Indemnity filed counterclaims for declaratory relief and moved for leave to file a third-party declaratory judgment complaint against MSA's remaining insurers, as well as claims for contribution and indemnification. On November 29, 2007, the Pennsylvania court dismissed Century Indemnity's counterclaims against MSA on the basis of Vale, because Century Indemnity had not joined the underlying claimants. At a subsequent status conference, Century Indemnity advised the court that "in light of its November 29, 2007 ruling, Century did not believe that its proposed claims for declaratory relief against MSA's other insurers would survive a motion to dismiss on Vale grounds." Century Indemnity did not seek to further contest the validity of Vale or its applicability to its claims for declaratory relief. Instead, on January 30, 2008, Century filed an amended motion for leave to join additional defendants, seeking contribution and indemnification only from Columbia Casualty Company, The North River Insurance Company and Northbrook Excess and Surplus Insurance Company. That motion remains pending.

IV.
We have previously noted Sensient's requirement that a party seeking to overcome the presumption in favor of an earlier-filed action, 193 N.J. at 387, 939 A.2d 767, initially must demonstrate that the two actions involve substantially the same parties, claims and issues. Id. at 391, 939 A.2d 767. We find that requirement to be applicable here, as well, since we can discern no basis to dismiss Century Indemnity's suit if adequate relief is not available to it as the result of the later-filed Pennsylvania action. Century Indemnity is entitled to an adjudication of its contractual rights and obligations in one forum or another.
The fact that, here, the Pennsylvania and New Jersey actions are not the same brings immediately to the fore the choice-of-law issue that we previously identified as central to the case: whether New Jersey's pro rata allocation among triggered insurers will be found to be applicable to this dispute, or whether Pennsylvania's joint and several allocation is applicable. This is so, because if a joint and several approach is adopted, the declaratory relief that Century Indemnity seeks in the New Jersey action becomes essentially meaningless. Joint and several liability, by its nature, requires only the participation of the designating insured (in this case, MSA), the designated insurer (Century Indemnity), and perhaps, those other triggered carriers from which contribution could reasonably be sought (according to Century Indemnity: Columbia Casualty, North River and Northbrook). A breach of contract action such as that pending in Pennsylvania suffices to resolve the relevant issues between the parties, including those issues that relate specifically to the proper interpretation of the terms of the triggered contracts, and the lack of identity between the Pennsylvania and New Jersey proceedings becomes immaterial. The New Jersey coverage action has significance for present purposes only if a pro rata allocation scheme is found to be applicable, since in that circumstance, the more limited Pennsylvania action cannot be deemed to provide adequate relief. Thus, the choice of law that was dispositive in connection with an evaluation of special equities in a comity context in Sensient arises here at the earlier stage of an analysis of substantial equivalence." *104 Choice-of-law principles, generally applicable to the interpretation of liability insurance contracts, were set forth by the New Jersey Supreme Court in State Farm Mut. Auto. Ins. Co. v. Estate of Simmons, 84 N.J. 28, 417 A.2d 488 (1980). There, the Court abandoned the inflexibility of a place of the contract rule in favor of a broader consideration of which state possesses the most significant relationship to the transaction and the parties, as guided by the Restatement (Second) of Conflict of Laws (Restatement) § 188[8] (1971) and the principles of § 6.
The significant relationship test focuses upon that state which has the most meaningful connections with the transaction and the parties in issue. It calls for an "evaluat[ion] according to their relative importance" of several relevant "contacts," such as the domicile of the parties and the places of contracting and performance.
[Estate of Simmons, supra, 84 N.J. at 34, 417 A.2d 488 (citing Restatement § 188).]
Section 6, in turn, requires consideration of these factors in light of "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."
As the Court stated hi Estate of Simmons, the proper approach to choice-of-law issues in liability insurance contract controversies
calls for recognition of the rule that the law of the place of the contract ordinarily governs the choice of law because this rule will generally comport with the reasonable expectations of the parties concerning the principal situs of the insured risk during the term of the policy and will furnish needed certainty and consistency in the selection of applicable law. At the same time, this choice-of-law rule should not be given controlling or dispositive effect. It should not be applied without a full comparison of the significant relationship of each state with the parties and the transaction. That assessment should encompass an evaluation of important state contacts as well as a consideration of the state policies affected by, and governmental interest in, the outcome of the controversy.
[Id. at 37, 417 A.2d 488.]
In Sensient, the Court employed the choice-of-law analysis set forth in the later cases of Pfizer, Inc. v. Employers Ins. of Wausau, 154 N.J. 187, 205, 712 A.2d 634 (1998), HM Holdings, Inc. v. Aetna Cas. & Surety Co., 154 N.J. 208, 215, 712 A.2d 645 (1998), Unisys Corp. v. Ins. Co. of N. Am., 154 N.J. 217, 223, 712 A.2d 649 (1998), and Gilbert Spruance Co. v. Penna. Mfrs.' Assn. Ins. Co., 134 N.J. 96, 97-98, 629 A.2d 885 (1993), which adopted a site-specific approach pursuant to the principles of Restatement § 193, to find New Jersey's interpretation of the standard pollution exclusion to be applicable to the coverage issue before it as the result of New Jersey's strong interest in achieving waste cleanup in this State and adequate funding *105 for that enterprise. Sensient, supra, 193 N.J. at 396, 939 A.2d 767. However, that interest is inapplicable here, and as the Court has recognized, "the Spruance principles may not be readily transferable from environmental-coverage cases to products-liability cases." Pfizer, supra, 154 N.J. at 195 n. 3, 712 A.2d 634 (concurring with that "sound observation" of Chief Judge Becker in NL Indus., Inc. v. Commercial Union Ins. Co., 65 F.3d 314, 316 (3d Cir.1995)).
In the present case, we see no reason to diverge from the principle that the law of the place of the contracting applies, finding no "dominant significant relationship" to the transaction on the part of New Jerseya state that appears to be wholly foreign to both Century Indemnity and MSA. NL Indus., supra, 65 F.3d at 316. Unlike Sensient, this is indeed a "contract dispute over insurance coverage," 193 N.J. at 382, 939 A.2d 767, as to which New Jersey has no significant interest, regardless of the method of allocation employed. Even in the context of coverage for environmental claims, New Jersey has not insisted on application of its coverage principles to out-of-state risks. Gilbert Spruance, supra, 134 NJ. at 112, 629 A.2d 885.
We therefore find it reasonable to assume for purposes of determining the adequacy of Pennsylvania as a forum, that no greater relief would be afforded to Century Indemnity here than will be afforded in the Pennsylvania action.[9]

V.
The question then becomes whether, as a substantive matter, the trial court erred in dismissing Century Indemnity's New Jersey suit. In evaluating this issue, we again rely on comity analysis insofar as it weighs the special equities that would favor one jurisdiction over another.
In this regard, we recognize that New Jersey courts have the discretion to dismiss declaratory judgment actions that are found to have been improperly filed. See, e.g., Donadio v. Cunningham, 58 N.J. 309, 325, 277 A.2d 375 (1971), Independent Realty Co. v. Twp. of No. Bergen, 376 N.J.Super. 295, 302, 870 A.2d 637 (App. Div.2005); Rego Indus., Inc. v. Am. Modern Metals Corp., 91 N.J.Super. 447, 453, 221 A.2d 35 (App.Div.1966); Utility Blade & Razor Co. v. Donovan, 33 N.J.Super. 566, 570-73, 111 A.2d 300 (App.Div.1955). This principle has been utilized in other jurisdictions to dismiss first-filed preemptory declaratory judgment actions instituted to obtain a forum advantage, so as to permit the "natural plaintiffs" action to proceed in the plaintiff's Chosen court. See, e.g., Factors, Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 219 (2d Cir.1978) (when plaintiff received a notice of suit letter from the defendant and filed its declaratory judgment action in anticipation of that suit, that fact may constitute an equitable consideration supporting the determination to permit the later-filed action to proceed to judgment in the defendant's chosen forum), cert. denied, sub nom, Pro Arts, Inc. v. Factors, Etc., Inc., 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); Great Am. Ins. Co. v. Houston Gen. Ins. Co., 735 F.Supp. 581, 585-86 (S.D.N.Y.1990) (declaring plaintiff's race to the court house to constitute a procedural manipulation of forums and actions that would not be countenanced).
In Sensient, such an unannounced race to the courthouse was deemed a "special equity" weighing in favor of retaining New Jersey's jurisdiction over a second-filed action, *106 despite the earlier institution by the insurer of a New York proceeding. 193 N.J. at 387-88, 939 A.2d 767. As in Sensient, the documentary evidence here, reveals Century Indemnity's unseemly haste, when confronted with MSA's tender pursuant to J.H. France, to establish jurisdiction in a state with which the parties had no relevant contact, but one whose law favored the insurer's position. The Sensient Court's decision provides ample grounds for declining to enforce a first-filed rule under such circumstances. Ibid.
Further, considerations relevant to a forum non, conveniens analysis suggest no basis for retaining jurisdiction in this State. As we recognized in American Home Prods. Corp. v. Adriatic Ins. Co., 286 N.J.Super. 24, 668 A.2d 67 (App.Div. 1995), a decision affirming denial of a stay or dismissal of a second-filed New Jersey action on comity grounds, a "`comity-stay' analysis is qualitatively different from a forum non conveniens analysis." Id. at 35, 668 A.2d 67.
A forum non conveniens analysis examines whether the New Jersey forum is totally inappropriate, regardless of who filed the action or when it was filed. Principles of comity, on the other hand, might require granting a stay even when New Jersey, had it been the first forum selected, would have been entirely appropriate. The general rule favors stays or dismissals in comity-stay situations, in the absence of special equities. The general rule in a forum non conveniens analysis favors retention of jurisdiction, unless the forum is manifestly inappropriate.
[Ibid.]
As in American Home Prods., we find the use of forum non conveniens concepts to be useful here. In the present case, the proximity between Pennsylvania and New Jersey and the likelihood that any witnesses at trial will be employees of the parties renders relatively inconsequential the private interest factors relevant to a forum non conveniens type of analysis,[10] although we recognize that, in a dispute between MSA and Century Indemnity, it is unlikely that any witnesses or documents will be located in New Jersey, their situs most likely being Pennsylvania.
However, we note that no deference need be given to Century Indemnity's choice of a forum that is neither its place of incorporation or principal place of business. Kurzke v. Nissan Motor Corp., 164 N.J, 159, 171, 752 A.2d 708 (2000). Moreover, our evaluation of the public-interest factors articulated by the United States Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062-63 (1947) and recognized in Kurzke, 164 N.J. at 165, 752 A.2d 708, provide no grounds for retaining jurisdiction here. Those factors are:
(1) the administrative difficulties which follow from having litigation pile up in congested centers rather than being handled at its origin, (2) the imposition of jury duty on members of a community having no relation to the litigation, (3) the local interest in the subject matter such that affected members of the community may wish to view the trial, and *107 (4) the local interest in having localized controversies decided at home.
[Ibid.]
As the record reflects, the principal parties to the present dispute, as ripened by MSA's tender of its defense to Century Indemnity, are Pennsylvania corporations. Any allocation litigation in New Jersey will be complex and time-consuming, and will constitute a drain upon New Jersey's judicial resources. For the reasons, that we. have expressed, resolution of the allocation issues raised will likely require application of the laws of Pennsylvania, not New Jersey and, if Century Indemnity is correct in its construction of J.H. France as applicable only to primary-level policies, it will require a forecast of Pennsylvania law in an area in which Pennsylvania's courts have not ruled. Moreover, although North River is a New Jersey corporation, we find it to be unlikely that any local interest will be generated in the resolution of a dispute regarding the allocation of coverage obligations under a contract delivered in Pennsylvania to a Pennsylvania company.[11] In short, we find nothing in the principles applicable to a forum non conveniens analysis that would support the retention of jurisdiction here, Compare Sensient, supra, 193 N.J. at 390, 396, 939 A.2d 767.
As an additional matter, we recognize that the Pennsylvania litigation has now advanced well beyond that of New Jersey, which was dismissed at the outset. See Sensient, supra, 193 N.J. at 396, 939 A.2d 767.
In conclusion, we are satisfied that adequate relief can be obtained by Century Indemnity in the breach of contract action instituted by MSA in the Pennsylvania's courts, and that the trial court did not misuse its discretion in dismissing the first-filed New Jersey action in favor of that filed by MSA in Pennsylvania.
Affirmed.
NOTES
[1] U.S. Fire Insurance Company, which Century Indemnity denominates a "related insurer," is an insurance company organized under the laws of Delaware, with its principal place of business in New York. It is also a plaintiff-appellant with respect to its policy number XXXXXXXXXX, only, effective during the policy period from April 1, 1979 to April 1, 1980. At the time of this action, its insured, Mine Safety Appliances Company, had not made a demand for defense or indemnity pursuant to that policy, and its amount, level of coverage, and the policy layers underlying it are not specified in the record. Because of the lack of information or argument on appeal regarding U.S. Fire, we focus our analysis in this case upon Century Indemnity.
[2] However, in this matter, regardless of the law applied, insurance coverage would be available to meet the claimants' injury claims.
[3] INA was also a Pennsylvania insurance company with its principal place of business there. In addition to the excess coverage at issue, INA issued primary policies of liability insurance to MSA in the period from March 14, 1952 to April 1, 1971. That coverage has been exhausted. Additionally, Travelers' primary coverage for the periods from April 1, 1971 to April 1, 1986 has been exhausted.
[4] CalUnion was not a Pennsylvania insurance company. However its policy was issued in Pennsylvania through a Pennsylvania insurance broker.
[5] Lydia Silpe, a senior claims handler for Century Indemnity's claims administrator, Resolute Management, Inc., has identified those issues in a certification as: (1) the applicability of the J.H. France decision to Century Indemnity's excess policies; (2) the proper interpretation of "occurrence" language for purposes of determining policy exhaustion; (3) Century Indemnity's duty to reimburse defense costs; (4) whether defense costs are included in policy limits; (5) whether the insurer's duty to provide indemnification is triggered before payments are made by MSA; (6) whether per occurrence limits apply annually or to a policy's multi-year term; (7) the relationship of date of first exposure to coverage; (8) the applicability of a policy pollution exclusion to certain claims; (9) whether policies issued by North River and CNA are presently triggered; and (10) Century Indemnity's rights against MSA's other insurers.
[6] St. Paul Travelers, The Hartford, CNA, and Westport Insurance/Coregis Insurance Co.
[7] MSA's Berner objected to the conditions imposed upon MSA's defense in a letter dated June 14, 2006,
[8] Section 188 provides that in the absence of an effective choice of law by the parties, the court should take into account the following contacts in applying the principles of § 6: the place of the contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and the domicil, residence, nationality, place of incorporation and place of business of the parties.
[9] We do not regard the fact that North River is a New Jersey corporation to be of sufficient significance to change our analysis of this issue.
[10] Those private interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditions and inexpensive." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062 (1947); see also Kurzke v. Nissan Motor Corp. in U.S.A., 164 N.J. 159, 166, 752 A.2d 708 (2000) (recognizing applicability of Gilbert's factors).
[11] We note in this regard that North River has not sought to maintain jurisdiction in New Jersey.