**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2376-23

JESSE DE CHACON and
LAURA GREER,

     Plaintiffs-Appellants,

v.

CAESARS ENTERTAINMENT
CORP., CAESARS ATLANTIC
CITY and BALLY'S ATLANTIC
CITY,

     Defendants,

and

MICHAEL NIEVES,

     Defendant-Appellant,

and

UNITED SERVICES
AUTOMOBILE ASSOCIATION.

     Defendant-Respondent.

_____

Argued October 28, 2025 – Decided December 16, 2025

Before Judges Mayer, Gummer, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0953-19.

John E. Keefe, Jr., argued the cause for appellants (Keefe Law Firm, attorneys; John E. Keefe, Jr. and Stephen T. Sullivan, Jr., of counsel and on the briefs).

Walter F. Kawalec, III, argued the cause for respondent (Marshall Dennehey, PC, attorneys; Barbara J. Davis, David D. Blake and Walter F. Kawalec, III, on the brief).

PER CURIAM

Plaintiffs Jesse De Chacon and Laura Greer appeal from orders granting the motions of defendant United Services Automobile Association (USAA) to dismiss plaintiffs' claims and defendant Michael Nieves's cross-claim against it and denying plaintiffs' motions for reconsideration and to intervene in Nieves's cross-claim against USAA. Plaintiffs fault the trial court for, among other things, applying New York law to interpret the USAA homeowners insurance policy at issue. Perceiving no error or abuse of discretion in that determination or the orders under appeal, we affirm.

I.

On March 7, 2019, plaintiffs filed a complaint in the Law Division, seeking damages from Caesars Entertainment Corp., Caesars Atlantic City, and

Bally's Atlantic City (the casino defendants), and Nieves for injuries De Chacon had sustained during a physical altercation between De Chacon and Nieves. They alleged Nieves had "negligently and carelessly made physical contact" with De Chacon while they were at Bally's Casino in Atlantic City on September 16, 2018. In their first amended complaint, plaintiffs included counts in which they alleged Nieves's actions constituted assault and battery.

On August 22, 2022, plaintiffs filed a second amended complaint in which they named USAA as an additional defendant. Plaintiffs alleged Nieves was an insured under a homeowners insurance policy issued by USAA to Nieves's parents. They asserted a direct claim against USAA, seeking a judgment declaring USAA had breached its contractual duty to defend and indemnify Nieves and was "liable for the entire amount of any judgment or settlement" plaintiffs obtained against Nieves. In his October 7, 2022 answer to plaintiffs' second amended complaint, Nieves included a cross-claim against USAA, seeking a judgment declaring USAA was required to defend and indemnify him and awarding punitive damages for USAA's alleged "bad faith denial of coverage."

USAA answered Nieves's cross-claim, asserting he was not entitled to a defense or indemnity under the insurance policy at issue. It moved to dismiss

3

the second amended complaint, contending plaintiffs had no standing to bring a claim directly against it, any claims against USAA were premature because no judgment had been entered against any party, and plaintiffs' claims against USAA were moot because Nieves had filed a cross-claim for coverage, indemnification, and defense. After hearing argument, the trial court granted USAA's motion and dismissed the second amended complaint against USAA with prejudice in a November 9, 2022 order and memorandum of decision. The court found plaintiffs did not have standing to bring a direct claim against USAA and that the issue of whether Nieves was insured by USAA would "be handled within the cross-claim."

On November 30, 2022, plaintiffs moved for leave to intervene in Nieves's cross-claim against USAA. After hearing argument, the court denied the motion in a December 16, 2022 order, holding plaintiffs had failed to meet the requirements for intervention as of right under Rule 4:33-1 and permissive intervention under Rule 4:33-2. The court found plaintiffs' interests were protected given Nieves's cross-claim and plaintiffs' ability to participate in discovery and motion practice.

USAA moved for summary judgment on Nieves's cross-claim. In its motion papers, USAA admitted it had issued a homeowners insurance policy to

4

Nieves's parents and had denied him coverage under the terms of the policy. In support of its motion, USAA submitted copies of portions of the policy, a transcript of a plea hearing that took place on November 19, 2020, in State v. Nieves, No. ATL-18-003818 (Law Div.), a criminal case based on the September 16, 2018 incident; a judgment of conviction entered in that case on May 4, 2021; and portions of a transcript of a deposition taken of Nieves.

Under the "Personal Liability" provision of the "Liability Coverages" section of the policy, USAA agreed to pay "damages" up to its "limit of liability" and provide a defense "[i]f a claim is made or a suit is brought against any 'insured' for 'damages' because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies . . . ." The policy defined "[o]ccurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:  a. 'Bodily injury'; or b. 'Property damage.'" The policy excluded from personal-liability coverage "bodily injury" that:

> is reasonably expected or intended by any "insured" even if the resulting "bodily injury" or "property damage":
>
> (1) is of a different kind, quality or degree than initially expected or intended; or

(2) is sustained by a different person, entity, real or personal property, than initially expected or intended.

That exclusion contained the following exception: "However, this exclusion does not apply to 'bodily injury' resulting from the use of lawful reasonable force by any 'insured' to protect persons or property."

At the November 19, 2020 plea hearing in his criminal case, Nieves pleaded guilty to a charge of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7), in connection with the September 16, 2018 incident. Plaintiffs have acknowledged Nieves pleaded guilty "freely and voluntarily." N.J.S.A. 2C:12-1(b)(7) provides that a person is guilty of aggravated assault if the person "[a]ttempts to cause significant bodily injury to another or causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life recklessly causes such significant bodily injury." At the hearing, Nieves acknowledged he had "attempt[ed] to cause or . . . purposely, knowingly, or recklessly" caused De Chacon "significant bodily injury." He admitted he had struck De Chacon in the head, causing him to fall and hit his head again, which resulted in significant bodily injury. He acknowledged he had not been "under the influence" when he hit De Chacon and had understood what he was doing at the time.

6

As memorialized in the June 4, 2021 judgment of conviction, the Criminal Part judge subsequently accepted Nieves's guilty plea and imposed a five-year probationary term, conditioned on a 364-day jail term, plus fines and restitution. The judge included the following in the "Statement of Reasons" section of the judgment of conviction: "This conviction stems from a dispute at a casino bar. [Nieves] appears to have violently attacked another bar patron. [Nieves] claims that the victim was engaged in offensive behavior related to [Nieves's] female companion."

During his deposition in this case, Nieves described the September 16, 2018 incident. According to Nieves, De Chacon and two men with him approached Nieves, his girlfriend, and two women with them. Nieves described the men as "being a little extra aggressive as far as . . . interacting with them. . . . [I]t wasn't flirting, it was a little more than that. They were trying to get them upstairs." When Nieves asked the men to leave them alone, De Chacon walked away and the other two men stayed there but "were less aggressive" and "were friendlier and . . . seemed to get the hint." Nieves did not express any concerns about De Chacon to casino security or other employees. Nieves testified about what had happened just before he hit De Chacon.

Q. What is your next interaction with Mr. De Chacon?

A-2376-23

A.  So he comes back at this point in time and, again, the same thing.  We asked him to leave.  He's . . . harassing the girls.  We asked him to leave.

He then proceeds to grab my girlfriend . . . below the waist.  From there she mushes him.[1]

I then get involved.  I asked him to leave again, and then he does not.  We have words.  And then from there he . . . tells me, "What are you going to do?"  And then . . . that's when I struck Mr. De Chacon at that point in time.

 . . . .

Q.  And when Mr. De Chacon said, "What are you going to do," did you say anything to Mr. De Chacon or you just struck him right away?

A.  I struck him.

Q.  At any point in time did Mr. De Chacon physically touch you before you struck Mr. De Chacon?

A.  No, ma'am.

Q.  Did any of these two gentlemen that appeared to be with Mr. De Chacon physically touch you before you struck Mr. De Chacon?

A.  No, ma'am.

 . . . .

---

[1]  In his answers to interrogatories, which were submitted by Nieves in opposition to USAA's motion, Nieves stated his girlfriend had "pushed [De Chacon] away."

A-2376-23

Q. And would you agree that when Mr. De Chacon said, "What are you going to do," you and the girls could have walked away, correct?

A. I can't agree to that.

Q. And why not?

A. I feel like I had to make a split decision in order to protect myself and [my girlfriend]. So I felt like at that point in time that was the only one course of action I had.

Q. And after Mr. De Chacon initially touched [your girlfriend] and [she] said she was with you, did Mr. De Chacon touch [her] again?

A. No.

Plaintiffs opposed the summary-judgment motion, arguing genuine issues of material fact existed as to Nieves's subjective intent and USAA was obligated to defend and indemnify Nieves because the policy's intentional-act exclusion did not apply and, if it did, the lawful-reasonable-force exception to that exclusion applied. Plaintiffs submitted with their opposition copies of additional portions of the policy and deposition transcript. The additional transcript pages included Nieves's testimony that he had "felt threatened for [himself] and [his] girlfriend at the time" and had viewed himself as "protecting [his] girlfriend and [him]self . . . and that was [his] only course of action." The additional transcript pages also included Nieves's response when asked if he

9

disputed he had committed an aggravated assault: "My intentions were never to hurt him in that sense except it was a freak, freak situation."

In a reply brief, USAA admitted Nieves was an insured under the policy and contended New York law applied to the interpretation of the policy because Nieves, a New York resident, was "seeking coverage under a New York homeowner's insurance policy that insured his parent[s' New York] home" where he resided at the time of the incident. USAA asserted the sentencing judge in the criminal case had rejected any suggestion Nieves "acted in the defense of others" on the day of the incident based on its findings regarding mitigating factors. Despite Nieves's urging, the sentencing judge found "no basis to credit" mitigating factors two through five. See N.J.S.A. 2C:44-1(b)(2) ("The defendant did not contemplate that the defendant's conduct would cause or threaten serious harm"); N.J.S.A. 2C:44-1(b)(3) ("The defendant acted under a strong provocation"); N.J.S.A. 2C:44-1(b)(4) ("There were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense"); and N.J.S.A. 2C:44-1(b)(5) ("The victim of the defendant's conduct induced or facilitated its commission"). USAA argued the incident was not an "occurrence" under the terms of the policy and, thus, was not covered under the policy; the "intentional act exclusion" in the policy barred coverage; and Nieves

was "collaterally estopped from now asserting that he did not intend bodily injury" given his guilty plea to the charge of aggravated assault and was "estopped from asserting that he acted in the defense of others under New York insurance contract law."

After hearing argument, the court entered a January 25, 2024 order and memorandum of decision granting USAA's motion and dismissing with prejudice Nieves's cross-claim against it. The court found USAA did not have a duty to defend Nieves from any claims arising out of the September 16, 2018 incident; was not required to indemnify Nieves for any damages assessed against him as a result of the incident; and De Chacon was not entitled under the policy to reimbursement of damages for any judgment obtained. In the memorandum of decision, the court conducted a conflict-of-law analysis and found a substantive difference existed between New York and New Jersey law on whether an insured who had pleaded guilty to a crime was estopped from asserting the incident at issue was an accident. Applying choice-of-law rules, the court found New York law governed its interpretation of the policy because "the State of New York has the most meaningful connections with the transaction and the parties at issue" in that Nieves and his parents resided in

11

New York; the homeowners policy was issued in New York; and the insured property was located in New York.

Applying New York law, the court found the September 16, 2018 incident did not constitute an occurrence under the policy because Nieves's actions could not be considered accidental or unintentional. The court found:

> Mr. Nieves[ had] acted intentionally when he drew back his arm, clenched his fingers into a fist, and swung his fist at Mr. De Chacon's head. Moreover, because Mr. Nieves[] acted intentionally, his actions do not fit the definition of "accident" which inherently requires an "unintentional" act.
>
> Furthermore, the injuries Mr. De Chacon suffered were both "expected and intended" results of being punched in the head. Specifically, in punching someone in the head, it is to be expected that the injured person would sustain some type of injury, at minimum, to the face or, at worst, to the brain. In this case, the worst-case scenario occurred with Mr. De Chacon sustaining injuries to the brain. We recognize that Mr. Nieves[] did not intend to cause such severe injuries[;] however, that does not negate that a brain injury can be reasonably expected after being punched in the head.

The court found persuasive USAA's argument that "no reasonable jury could conclude that USAA ha[d] an obligation to provide insurance coverage for the claims asserted against [] Nieves." The court held "no reasonable jury could conclude that the physical altercation between the parties [fell] under the definition of 'occurrence' because Mr. Nieves['s] actions during the fight were

intentional" or that De Chacon's "injuries were not 'expected or intended' because it is reasonably expected that an individual would receive a brain injury after being punched in the head."

In a March 7, 2024 order, the court denied plaintiffs' subsequent reconsideration motion. Plaintiffs resolved their claims against the casino defendants and Nieves, who previously had assigned to De Chacon his claims and rights for coverage under the USAA policy in connection with this case. On March 28, 2024, the court entered an order of dismissal. This appeal followed.

II.

On appeal, plaintiffs assert they were permitted to bring a direct claim against USAA for declaratory relief and, thus, the court erred in dismissing their claim against USAA in the November 9, 2022 order. Plaintiffs argue the court erred in denying their motion to intervene in Nieves's cross-claim against USAA in the December 16, 2022 order, contending they had satisfied the standard for intervention under Rule 4:33-1. Plaintiffs also argue the trial court erred in granting USAA summary judgment on Nieves's cross-claim against it in the January 25, 2024 order and in denying their motion for reconsideration of that order in the March 7, 2024 order, asserting the court mistakenly applied New York law and failed to consider the lawful-reasonable-force exception to the

13

intended-act exclusion in the policy. Plaintiffs ask this court to reverse all orders "under appeal and enter a [d]eclaratory [j]udgment that: 1) New Jersey [law] applies to all issues; and 2) [p]laintiffs have established sufficient evidence to trigger the exception to the exclusion in USAA's [p]olicy as a matter of law, and Nieves was entitled to coverage under the [p]olicy." Unpersuaded by plaintiffs' arguments, we affirm.

A.

We first address plaintiffs' appeal of the January 25, 2024 order granting USAA summary-judgment on Nieves's cross-claim.

We review a grant of summary judgment de novo, using the same standard that governed the trial court's decision. Statewide Ins. Fund v. Star Ins. Co., 253 N.J. 119, 124-25 (2023). Under that standard, we "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 125 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "We accord no special deference to the trial court's legal conclusions." Birmingham v. Travelers N.J. Ins. Co., 475 N.J. Super. 246, 255 (App. Div. 2023).

14

Because "[c]hoice-of-law questions involve legal determinations," we review a trial court's resolution of those questions de novo. Cont'l Ins. Co. v. Honeywell Int'l, Inc., 234 N.J. 23, 46 (2018). "[W]hen a civil action is brought in New Jersey, we use New Jersey choice-of-law rules to decide whether this state's or another state's legal framework should be applied." Ibid.

Under New Jersey's choice-of-law rules, "the first inquiry 'is whether the laws of the states with interests in the litigation are in conflict.'" In re Accutane Litig., 235 N.J. 229, 254 (2018) (quoting McCarrell v. Hoffman-La Roche, Inc., 227 N.J. 569, 584 (2017)). "A conflict of law arises when the application of one or another state's law may alter the outcome of the case . . . or when the law of one interested state is 'offensive or repugnant' to the public policy of the other . . . ." Ibid. (quoting Honeywell, 234 N.J. at 46). If no conflict exists, "'there is no choice of law issue to be resolved,' . . . and the forum state applies its own law . . . ." Ibid. (quoting P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 143 (2008)). If a conflict exists, the court must then determine which state's substantive law applies. Id. at 257.

In State Farm Mutual Auto Insurance Co. v. Estate of Simmons, 84 N.J. 28 (1980), our Supreme Court "rejected the mechanical and inflexible lex loci contractus rule in resolving conflict-of-law issues in liability-insurance

15

contracts." Gilbert Spruance Co. v. Pa. Mfrs.' Ass'n Ins. Co. of N. Am., 134 N.J. 96, 102 (1993). Instead, the Court "adopted a more flexible approach that focuses on the state that has the most significant connections with the parties and the transaction." Ibid. As the Court explained in Simmons, that approach:

> calls for recognition of the rule that the law of the place of the contract ordinarily governs the choice of law because this rule will generally comport with the reasonable expectations of the parties concerning the principal situs of the insured risk during the term of the policy and will furnish needed certainty and consistency in the selection of the applicable law. . . . At the same time, this choice-of-law rule should not be given controlling or dispositive effect. It should not be applied without a full comparison of the significant relationship of each state with the parties and the transaction. That assessment should encompass an evaluation of important state contacts as well as a consideration of the state polices affected by, and governmental interest in, the outcome of the controversy.
>
> [84 N.J. at 37.]

See also Century Indem. Co. v. Mine Safety Appliances Co., 398 N.J. Super. 422, 436 (App. Div. 2008) (acknowledging the choice-of-law principles articulated by the Court in Simmons apply to the interpretation of liability insurance contracts).

Under that standard, a court considers which state "has the most meaningful connections with the transaction and the parties in issue," evaluating

16

"several relevant contacts, such as the domicile of the parties and the places of contracting and performance." Century, 398 N.J. Super. at 436 (quoting Simmons, 84 N.J. at 34) (internal quotation marks omitted). A court also considers the following factors:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.
>
> [Ibid. (quoting Restatement (Second) of Conflict of L. (Restatement) § 6 (Am. Law Inst. 1971))].

Applying that law to this case, we perceive no error in the court's conflict-of-law analysis and application of New York law in interpreting the policy. The issue in Nieves's cross-claim against USAA and plaintiffs' attempted direct claim against USAA was whether Nieves was entitled to coverage for the September 16, 2018 incident under the USAA policy. A conflict exists between the states' substantive applicable law. Under New York law, an insured who pleaded guilty to assault is not entitled to insurance coverage for damages caused by the assault because the issue of his intent to inflict bodily injury on the other person is no longer in question. See United Servs. Auto. Ass'n v.

Iannuzzi, 28 N.Y.S.3d 878, 878 (N.Y. App. Div. 2016); Home Mut. Ins. Co. v. Lapi, 596 N.Y.S.2d 885, 887 (N.Y. App. Div. 1993).  Under New Jersey law, an insured who pleaded guilty to assault may still be entitled to insurance coverage for damages caused by the assault.  See State Farm Fire & Cas. Co. v. Connolly, 371 N.J. Super. 119, 125 (App. Div. 2004).  Because the application of one or the other state's law potentially could alter the outcome of the case, a conflict exists.  In re Accutane Litig., 235 N.J. at 254.

Plaintiffs acknowledge that difference between New York and New Jersey law but fault the court for "perform[ing] one analysis for all issues" and contend the court should have found a conflict only on that particular point of law and should have applied New Jersey law.  We reject plaintiffs' overly-narrow approach to the choice-of-law issue before the court.  We recognize that "in multi-party actions, choice-of-law principles may call for the application of a different state's laws from party-to-party or claim-to-claim."  Fairfax Fin. Holdings Ltd. v. S.A.C. Cap. Mgmt., LLC, 450 N.J. Super. 1, 34 (App. Div. 2017); see also Erny v. Est. of Merola, 171 N.J. 86, 94 (2002) ("Ordinarily, choice-of-law determinations are made on an issue-by-issue basis . . . .").  But the claim here -- the issue here -- is whether Nieves is entitled to coverage for the September 16, 2018 incident under the USAA policy.  And an analysis of

18

that issue demonstrates a conflict exists and New York law should be applied in deciding it.

The insureds named in this homeowners policy were Nieves's parents. They resided in New York. The property insured under the policy is their home, which is located in New York. Nieves was insured under the policy because he lived in that home. Thus, he was a New York resident. New York has a clear interest in protecting the expectations of insured policyholders who are citizens of New York regarding homeowners insurance policies covering property and people located in New York. New York also has an interest in procuring predictable and uniform results for insurance-coverage claims made under those policies.

That the punch was thrown in New Jersey doesn't diminish those interests. If where the punch was thrown were the determinative factor in what law applies, the policy at issue potentially could be interpreted based on the laws of all fifty states. That conclusion is directly contrary to the concern for "certainty, predictability and uniformity of result." Century, 398 N.J. Super. at 436 (quoting Restatement § 6(f)). Given New York's significant and dominant interests, New York law applies.

A-2376-23

Under New York law, Nieves is not entitled to coverage for the September 16, 2018 incident under the USAA policy. His guilty plea is a determinative factor under New York law. See Iannuzzi, 28 N.Y.S.3d at 878; Lapi, 596 N.Y.S.2d at 887. But even in cases that did not involve a guilty plea, New York courts have consistently held the insureds were not entitled to coverage because the physical altercations at issue did not constitute an occurrence under policy terms identical or similar to those present in this case.

For example, in Tangney v. Burke, 800 N.Y.S.2d 44, 45 (N.Y. App. Div. 2005), the court affirmed an order granting summary judgment in favor of the third-party defendant insurer. The court held the insurer did not have a duty to indemnify or defend an insured for bodily injury sustained by another person as a result of a physical altercation with the insured because the intentional conduct could not be classified as an "occurrence" for which the homeowners policy would provide coverage. Ibid. The court found the injuries allegedly sustained "were inherent in the activity [the insured had] engaged in" and the insured's actions could not "be construed as an accident within the definition of 'occurrence' for which [the] policy affords coverage." Ibid. The court concluded that even "[w]ere there coverage under the definition of 'occurrence' in [the] policy, then an exclusion would apply for bodily injury 'which is expected or

intended by any insured,' including [the insured in that case]." Ibid.; see also Nationwide Mut. Fire Ins. Co. v. Nelson, 220 N.Y.S.3d 157, 158-59 (N.Y. App. Div. 2024) (in case involving a claim for coverage for injuries sustained by someone when the insured "punched and kicked" him and a policy that defined "'occurrence'" as "'bodily injury . . . resulting from an accident[,]'" court affirmed order granting the insurer summary judgment because "the incident at issue was not an 'occurrence' giving rise to policy coverage" but "was an intentional act, which did not constitute an 'occurrence' within the meaning of the policy"); Rinaldi v. Wakmal, 123 N.Y.S.3d 156, 158-59 (N.Y. App. Div. 2020) (court affirms order granting summary judgment to insurer, holding the insured's action in striking someone twice in the face during a physical alteration "was an intentional act, which did not constitute an 'occurrence' within the meaning of [the homeowners] policy"); Ward v. Sec. Mut. Ins. Co., 597 N.Y.S.2d 227, 227-28 (N.Y. App. Div. 1993) (in case involving a claim for coverage for injuries sustained by someone "as the result of a beating" the insured had inflicted on her, court affirmed order granting the defendant insurer summary judgment because the policy provided coverage for "an occurrence, defined in the policy as 'an accident . . .'" and the beating was "an intentional act and as such cannot constitute an accident").

21

Applying New York law to the policy language and facts in this case, no reasonable factfinder could conclude the September 16, 2018 incident was an occurrence under the policy. Thus, Nieves was not entitled to coverage under the USAA policy.

Plaintiffs focus on what they call the "defense of others" exception to the intentional-act exclusion. That focus is misplaced. Because we conclude the September 16, 2018 incident was not an "occurrence" giving rise to coverage under the policy, we do not address the policy provisions regarding what is excluded from coverage. But even if that exception to the exclusion were at issue, no reasonable factfinder, based on the evidence in the record including Nieves's testimony, could conclude De Chacon's injuries resulted from "the use of lawful reasonable force by any 'insured' to protect persons or property."

Finally, in the interest of completeness, we analyze the case under New Jersey law and conclude that summary judgment was appropriate even under New Jersey law. When deciding whether circumstances constitute an "occurrence" under a policy defining that term as an "accident," New Jersey courts determine "the accidental nature of an occurrence . . . by analyzing whether the alleged wrongdoer intended or expected to cause an injury. If not, then the resulting injury is 'accidental,' even if the act that caused the injury was

A-2376-23

intentional." <u>Voorhees v. Preferred Mut. Ins. Co.</u>, 128 N.J. 165, 183 (1992). "When the actions are particularly reprehensible, the intent to injure can be presumed from the act without an inquiry into the actor's subjective intent to injure." <u>Id.</u> at 184. "Absent exceptional circumstances that objectively establish the insured's intent to injure, we will look to the insured's subjective intent to determine intent to injure." <u>Id.</u> at 185.

"[O]nce it is established the wrongdoer 'subjectively intends or expects to cause <u>some</u> sort of injury, that intent will generally preclude coverage.'" <u>Hammer v. Thomas</u>, 415 N.J. Super. 237, 246 (App. Div. 2010) (quoting <u>SL Indus., Inc. v. Am. Motorists Ins. Co.</u>, 128 N.J. 188, 212 (1992)). "If there is evidence that the extent of the injuries was improbable, however, then the court must inquire as to whether the insured subjectively intended or expected to cause that injury." <u>SL Indus.</u>, 128 N.J. at 212.

Because Nieves's actions were not "particularly reprehensible," we look to his "subjective intent to determine intent to injure." <u>Voorhees</u>, 128 N.J. at 184-85; <u>cf.</u> <u>Atl. Emps. Ins. Co. v. Tots & Toddlers Pre-Sch. Day Care Ctr.</u>, 239 N.J. Super. 276, 283 (App. Div. 1990) (rejecting application of a subjective test of intent in case in which insured allegedly sexually assaulted children). The evidence in the record, particularly Nieves's testimony, demonstrates Nieves

23

intended or expected "to cause some sort of injury" when he punched De Chacon. SL Indus., 128 N.J. at 212. He may not have intended, as he testified, to hurt De Chacon "in that sense," but he clearly intended or expected to hurt him when he punched him. No reasonable factfinder could conclude otherwise. Because the record contains no evidence the extent of De Chacon's injuries was improbable, our inquiry ends there. Because the September 16, 2018 incident was not an "occurrence" under the terms of the policy, summary judgment would have been appropriate even if the trial court had applied New Jersey law.

For all of these reasons, we affirm the January 25, 2024 order granting USAA's summary-judgment motion. Given our affirmance of that order, we perceive no abuse of discretion in the court's denial of plaintiffs' reconsideration motion and, accordingly, affirm the March 7, 2024 order. See Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (applying abuse-of-discretion standard when reviewing a trial court's order on reconsideration motion).

B.

We turn briefly to the remaining orders under appeal: the order granting USAA's motion to dismiss the second amended complaint and the order denying plaintiffs' motion for leave to intervene in Nieves's cross-claim against USAA.

We do not address the substance of plaintiffs' arguments regarding those orders because any alleged error has been rendered harmless by our affirmance of the order granting USAA summary judgment. Lanzo v. Cyprus Amax Min. Co., 467 N.J. Super. 476, 508 (App. Div. 2021) ("Any error deemed harmless should be disregarded"). Even if the court had allowed plaintiffs' direct claim against USAA to proceed or permitted plaintiffs to intervene, plaintiffs ultimately would not have prevailed. As the trial court found when it granted the motion to dismiss the second amended complaint, the issue of whether Nieves was insured by USAA for the September 16, 2018 incident was "handled within the cross-claim."

Moreover, plaintiffs participated in discovery and motion practice in the case and had an opportunity to present their position regarding the insurance-coverage issue before the court, which the court fully considered. See N.J. Dep't of Env't Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 295 (App. Div. 2018) (finding "any error in denying intervention . . . was not prejudicial and did not bring about an unjust result" because the court permitted the parties that sought intervention "to assert their claims as if they had intervened, and [it] considered fully the arguments they raised . . . ."). We perceive no prejudice or unjust result in the dismissal or intervention order.

A-2376-23

Because any alleged error was harmless, we affirm the November 9, 2022 order granting USAA's motion to dismiss the second amended complaint and the December 16, 2022 order denying plaintiffs' motion for leave to intervene in Nieves's cross-claim against USAA.

C.

In sum, we affirm the November 9, 2022 order granting USAA's motion to dismiss the second amended complaint, the December 16, 2022 order denying plaintiffs' motion for leave to intervene in Nieves's cross-claim against USAA, the January 25, 2024 order granting USAA's summary-judgment motion, and the March 7, 2024 order denying plaintiffs' reconsideration motion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2376-23